**UNITED STATES of America, Commonwealth of Virginia, Plaintiff, Appellant,**

v.

**COLONIAL CHEVROLET CORPORATION, Hoff Cadillac Incorporated, Phillips Oldsmobile, Incorporated, Phillips Mercury-Lincoln, Incorporated, Kimnach Ford, Incorporated, Cavalier Ford, Incorporated, Atlantic AMC/Jeep, Incorporated, Tidewater Automobile Dealers Association, and several unnamed individuals and corporations, Appellees.**

**UNITED STATES of America, Commonwealth of Virginia, Appellant, Plaintiff,**

v.

**COLONIAL CHEVROLET CORPORATION, Hoff Cadillac Incorporated, Phillips Oldsmobile, Incorporated, Phillips Mercury-Lincoln, Incorporated, Kimnach Ford, Incorporated, Cavalier Ford, Incorporated, Atlantic AMC/Jeep, Incorporated, Tidewater Automobile Dealers Association, and several unnamed individuals and corporations, Appellees.**

Nos. 79–5237, 79–5238.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1980.

Decided Aug. 12, 1980.

---

John B. Russell, Jr., Asst. Atty. Gen., Richmond, Va. (Marshall Coleman, Atty. Gen., Richmond, Va., Joseph W. Kaestner, Asst. Atty. Gen., Antitrust Unit on brief, Richmond), for appellant Commonwealth of Virginia.

Peter L. De La Cruz, Dept. of Justice, Washington, D. C. (James R. Weiss, John H. Shenefield, Asst. Atty. Gen., Barry Grossman, Dept. of Justice, Washington, D. C., on brief), for appellant United States of America.

David F. Peters, Richmond, Va. (Joseph M. Spivey, III, Priscilla A. Burbank, Hunton & Williams, Richmond, Va., on brief), for Tidewater Automobile Dealers Association.

Joseph L. Lyle, Jr., Pickett, Spain & Lyle, Virginia Beach, Va., on brief, for Hoff Cadillac, Inc.

Guilford D. Ware, Crenshaw, Ware & Johnson, Norfolk, Va., on brief, for Cavalier Ford, Inc.

Hunter W. Sims, Jr., Canoles, Mastracco, Martone, Barr & Russell, Norfolk, Va., on brief, for Phillips Mercury-Lincoln, Inc.

William R. O'Brien, Brydges, Hudgins, Ege, Burt & O'Brien, Virginia Beach, Va., on brief, for Kimnach Ford, Inc.

Guy R. Friddell, III, Norfolk, Va. (Richard B. Spindle, III, Thomas G. Johnson, Jr., Willcox, Savage, Lawrence, Dickson & Spindle, P. C., Norfolk, Va., on brief), for Certain Unindicted Individuals and Corporations.

Robert Abrams, Atty. Gen. of N. Y., Shirley Adelson Siegel, Sol. Gen., John M. Desiderio, Asst. Atty. Gen., Chief, Anti-Monopolies Bureau; Michael J. Landron, Deputy Asst. Atty. Gen., New York City, on brief, for the State of New York as amicus curiae.

Stephen H. Sachs, Atty. Gen., George A. Nilson, Deputy Atty. Gen., Charles O. Monk, II, Asst. Atty. Gen. and Chief, Antitrust Division, Timothy J. Shearer, Asst. Atty. Gen., Baltimore, Md., on brief, for the State of Maryland as amicus curiae.

Before WINTER, RUSSELL and SPROUSE, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This is an appeal from a denial of a petition for disclosure of grand jury materials in a concluded successful antitrust prosecution, as sought by the State Attorney General of Virginia, and the Attorney General of the United States, under the provisions of Section 15f(b), 15 U.S.C. We reverse.

To a federal antitrust indictment, charging the appellee Tidewater (Virginia) Automobile Dealers Association, along with certain members of that Association (also appellees in this proceeding) with engaging in a price-fixing conspiracy in connection with charges for auto body repairs, the defendants-appellees plead *nolo contendere*. The district court accepted the plea. Under the terms of Title III of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, which was "expressly adopted to create 'an effective mechanism to permit consumers to recover damages for conduct which is prohibited by the Sherman Act, by giving State attorneys general a cause of action [to sue as *parens patriae* on behalf of the States' citizens] against antitrust violators,'"[1] the Attorney General of the United States is required "[w]henever [he] has brought an action under the antitrust laws, and he has reason to believe that any State attorney general would be entitled to bring an action [under this *parens patriae* authority] based substantially on the same alleged violation of the antitrust laws" to "promptly give written notification thereof to such State attorney general."[2] Obedient to this statute the Attorney General of the United States notified the Virginia Attorney General of the successful prosecution of the appellees for a violation of the Sherman Act.

The Act has been extensively discussed in Scher, *Emerging Issues Under the Antitrust Improvements Act of 1976*, 77 Col.L.Rev. 679 (1978), and Kintner, Griffin and Goldston, *The Hart-Scott-Rodino Antitrust Improvements Act of 1976: An Analysis*, 46 Geo.Wash.L.Rev. 1 (1977–78). Neither article, however, touches on the specific problem involved in this proceeding.

---

1. This is the description of the Act as set forth by Justice Brennan in his dissenting opinion in *Illinois Brick Co. v. Illinois*, (1977) 431 U.S. 720, 756, 97 S.Ct. 2061, 2080, 52 L.Ed.2d 707.

In his report on the final bill as submitted by the conferees the Senate floor leader for the bill described this part of the bill thus:

"Title III is the legislative response to the present inability of our judicial system to afford equal justice to consumers for violation of the antitrust laws."

122 Cong.Rec. at 29148, September 7, 1976.

2. 15 U.S.C. § 15f(a).

This same Title of the Act further provided that in order "[t]o assist a State attorney general in evaluating the notice [of the federal antitrust action] or in bringing any [*parens patriae*] action . . . the Attorney General of the United States shall, upon request of such State attorney general, make available to him, to the extent permitted by law, any investigative files or other materials which are or may be relevant or material to the actual or potential cause of action . . . ."[3] The Attorney General of Virginia requested the Attorney General of the United States under this authorization to make available to him "all grand jury materials in the files of the United States Department of Justice which relate to the investigation of possible antitrust violations by automobile body shops in the Tidewater area [of] Virginia" and for access to the bills of particulars filed by the United States in the Sherman Act prosecution. In connection with this request, the Attorney General of Virginia, joined by the Attorney General of the United States, moved the district court, which had had jurisdiction over the federal criminal prosecution herein, for disclosure, subject to appropriate protective clauses, of "all grand jury materials in the files of the United States Department of Justice which relate to the investigation of possible antitrust violations . . . involved in *United States v. Colonial Chevrolet Corp., et al.*, Crim.No. 78–0016N," and for "access to the bill of particulars . . . currently under seal by Order of this Court." Notice of this motion was given the appellees. They entered objections to the motion. After a hearing on the motion, the district court denied the motion; the Attorney General of the United States and the Attorney General of Virginia have appealed.

The point at issue on the motion was the right of the Attorney General to disclose to the Attorney General of Virginia, under the terms of the Hart-Scott-Rodino Act, all the grand jury materials, including the transcript of testimony and the bill of particulars in his possession in connection with or related to the federal antitrust prosecution of the appellees. In denying disclosure the district court held that grand jury transcripts are not "investigative files" within the meaning of that term in the Act and are not, therefore, embraced within the Attorney General's statutory right to disclose but that, if they are "investigative files" under the Act, their disclosure by the Attorney General is allowed only "to the extent permitted by law," *i. e.*, as permitted by Rule 6(e), Fed.R.Crim.P., which, under the decisions applying such Rule, requires a showing of "particularized need" by the party seeking disclosure. It also found that a "particularized need" would not comprehend assisting in actual or potential civil antitrust litigation. Since the purpose of the State Attorney General in seeking disclosure was for the purpose of assisting in potential antitrust litigation, the petitioner Attorney General of Virginia had not shown the necessary "particularized need" required for disclosure, and the application for disclosure was denied.

■ Though not set forth in this sequence in its opinion, the reasoning by which the district court justified denial of disclosure begins logically with its conclusion that "investigative files," as that term is used in the statute, does not embrace grand jury proceedings.[4] We, however, do not agree with this narrow definition of the term "investigative files." In our opinion this construction of the term in the statute is plainly contrary to the legislative purposes of the statute involved. In Title III of the Act the Congress was manifestly seeking to encourage *parens patriae* suits by State attorneys general in order to "assist" in the public enforcement of the antitrust laws for the benefit of small consum-

---

**3.** 15 U.S.C. § 15f(b).

**4.** The district court found support for its view in *Matter of Grand Jury*, (M.D.Pa.1978) 469 F.Supp. 666, 671; *Little Rock School District v. Borden, Inc.*, (E.D.Ark.1979) 1979–2 Trade Cases (CCH) ' 62,809; *contra U. S. v. B. F. Goodrich Co.*, 1978–2 Trade Cases (CCH) ' 62,389 (N.D.Cal.1978), aff'd., *In re Montgomery County Real Estate, Etc.*, (D.Md.1978) 452 F.Supp. 54.

ers. To this end it sought to make available for the use of the State Attorney General, to the full extent permitted by law, all the materials developed in the federal investigation of the alleged antitrust violation. The use of grand jury proceedings as an "investigative" instrument in antitrust enforcement is well recognized.[5] Often the grand jury investigation is the most important part of the "investigative file" in an antitrust proceeding.[6] The assistance which Congress sought to provide by this statute for State attorneys general in maintaining *parens patriae* antitrust suits would frequently be negligible if the grand jury materials were to be excluded from the "investigative files and materials" which the Attorney General of the United States was authorized to make available to a State attorney general. It is unlikely in the extreme that Congress intended to exclude such materials from the statutory definition of investigative files. We are satisfied that grand jury transcripts in the possession of the Department of Justice fall clearly within the term "investigative files and materials," as used in the statute. And this is the conclusion reached by the only other United States Court of Appeals which has confronted this issue.[7]

We are mindful that Senator Abourezk, who was handling on the floor the 1976 Act for the Judiciary Committee, did during the final Senate debate on the Act state in reference to the specific provision of the Act with which we are concerned:

"The section specifically limits the Attorney General's power to release documents to whatever his powers are under existing law. *Under existing law* he cannot turn over materials given in response to a grand jury demand or to a civil investigative demand."[8] (Emphasis added)

The district court would read into this language a categorical declaration by the Senate floor leader for the bill that "investigative files," as used in the statute in question, did not include grand jury proceedings. It apparently assumed that "existing law," as referred to by Senator Abourezk, was an absolute bar to the disclosure of grand jury materials. All that Senator Abourezk was saying, however, was that under existing law (*i. e.*, under Rule 6(e) Fed.R.Crim.P.) the Attorney General could not *voluntarily* turn over such proceedings to the State Attorney General. That statement is perfectly true and the appellants so concede. The disclosure of grand jury proceedings must be authorized by the court, and the circumstances under which they may be disclosed are set forth in detail. We so declared in *In re Grand Jury Subpoenas, April, 1978, Etc.*, (4th Cir. 1978) 581 F.2d 1103, 1108–9, *cert. denied, sub nom., Fairchild Industries, Inc. v. Harvey*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979). Such is the reason the appellants filed their petition in the district court. But the court "under existing law" may authorize disclosure under the circumstances detailed in Rule 6(e)(3); in fact it has done so in many cases in support of proceedings in both federal and state judicial, and even in state administrative, proceedings.[9] The language

---

5. *See* Antitrust Adviser, § 9.6, p. 602 et seq., 2d Ed. 1978 (Shepard); Unikel, *Discovery of Grand Jury Transcripts in Civil Antitrust Cases in the Seventh Circuit: Fair Use or Abuse?* 66 *Ill.Bar J.* 706, n. 1 (1978), quoting Assistant Attorney General Baker.

6. See Wilson and Matz, *Obtaining Evidence for Federal Economic Crime Prosecutions: An Overview and Analysis of Investigative Methods*, 14 *Am.Crim.L.Rev.* 651 at 683–690 (1977).

7. *United States v. B. F. Goodrich Co.*, (9th Cir. 1980) 619 F.2d 798.

   To the same effect is the late Judge Blair's carefully reasoned opinion in *In re Montgomery County Real Estate, Etc.*, (D.Md.1978) 452 F.Supp. 54, n. 5.

8. *See* 122 Cong.Rec. at 29, September 7, 1976.

9. In *Antitrust Law Developments*, prepared by the Antitrust Section, American Bar Association (1975), the authors have listed many instances in which the courts have granted disclosure of grand jury materials covering concluded antitrust prosecutions in aid of *private* antitrust actions. For typical instances *see Illinois v. Sarbaugh*, (7th Cir. 1977) 552 F.2d 768, 774-78, *cert. denied, sub nom., J. L. Simmons Co. Inc. v. Illinois*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174; *Consolidated Edison Co. of N. Y. v. Allis-Chalmers Mfg. Co.*, (S.D.N.Y.1963)

of Senator Abourezk thus presents no impediment to authorizing disclosure in a proper case meeting the criteria stated in Rule 6(e)(3).

It must be remembered, too, that the language in the Act providing for disclosure originated in the House and not the Senate and that the inclusion of such language in the final enactment was, as Senator Abourezk freely conceded, at the instance of the House conferees.[10] The House left no doubt of its intention in including this language in the Act. In explaining the section embracing this language, the House Committee Report said that the section "reflect[ed] the committee's desire that the Federal Government cooperate fully with State antitrust enforcers" and that the language which said that "the Justice Department's investigative files [were to be made] available to the State attorney general 'to the extent permitted by law'" meant that "the files [were] to be made available except where specifically prohibited."[11] It is clear from this authoritative statement of the intention of the statute's drafters in the House that only matters, disclosure of which were "specifically (or absolutely) prohibited" were without the term "investigative files" in the statute. We are persuaded that this represents the proper construction of the statute to be followed by us in this decision.

■ The question thus becomes whether disclosure of grand jury proceedings is "specifically prohibited" by Rule 6(e), Fed.R. Crim.P. In resolving this issue we note at the outset that, as has been often observed, the Rule is not an absolute bar to or prohibition of the disclosure of grand jury proceedings. *Special February 1971 Grand Jury v. Conlisk*, (7th Cir. 1973) 490 F.2d 894, 896. The drafters of Rule 6(e) recognized that there could be situations in which there

217 F.Supp. 36, 38; *State of Washington v. American Pipe & Construction Co.*, (1966) 41 F.R.D. 59, 63; *In re Cement-Concrete Block, Chicago Area*, (N.D.Ill.1974) 381 F. Supp. 1108, 1111; *United States v. General Motors Corporation*, (E.D.Mich.1973) 352 F.Supp. 1071, 1072.

For illustrations of authorized disclosures of grand jury materials in State proceedings, *see Doe v. Rosenberry*, (2d Cir. 1958) 255 F.2d 118 (disclosure to grievance committee of a state bar); *Matter of Disclosure of Testimony, Etc.*, (8th Cir. 1978) 580 F.2d 281 (disclosure to municipality investigating judicial misconduct); *In re 1979 Grand Jury Proceedings*, (E.D.N.Y. 1979) 479 F.Supp. 93 (disclosure in connection with investigation of bribery of municipal employees).

**10.** *See* note 8.

**11.** The exact language of the Report is as follows:

'Section 4F promotes parens patriae actions as a major aspect of antitrust enforcement by encouraging Federal-State cooperation. The section provides that whenever the United States has brought suit in its proprietary capacity under § 4A of the Clayton Act, and the U.S. Attorney General believes that the same antitrust violation may have given rise to potential parens patriae claims, he shall notify the appropriate State attorneys general. Whenever a State attorney general so requests, in order to evaluate the notice from the U.S. Attorney General or in order to bring a parens patriae action, section 4F(b) requires the U.S. Attorney General to make the Justice Department's investigative files available to the State attorneys general 'to the extent permitted by law.' This means that the files are to be made available except where specifically prohibited.

"Section 4F(b) reflects the committee's desire that the Federal Government cooperate fully with State antitrust enforcers.

"The benefits of increases in Federal-State cooperation and coordination of antitrust enforcement are obvious, and are achieved in H.R.8532 without the expenditure of additional Federal funds."

H.R.No.94–499, 94th Cong., 2d Sess. 17 (1975), reprinted in 1976 U.S.Code Cong. & Admin.News, at pp. 2586-87.

It is true this statement was in a Report on an earlier version of the Act. But the only distinctions between the section 4F(b) discussed in House Report No. 94–499, and the present law are: (1) under the earlier version access was granted to the United States Attorney General's files (other than to evaluate notice) only for purposes of bringing an action under 4C, 15 U.S.C. § 15c (1976) (the *parens patriae* damage provision): the enacted version requires access for purposes of "bringing any action under this [the Clayton] Act" (emphasis added) and (2) under the earlier version the "usage clause" was conjunctive: "To assist a State attorney general in evaluating the notice *and* in bringing any action . . ." (emphasis added); this dual foundation for disclosure of investigative and other materials was changed in the enacted section by substituting "or" for "and."

would be ample justification for access by other parties to the grand jury transcripts, and the Rule, as finally approved, provided for disclosure under various circumstances, including "when so directed by the court preliminarily to or in connection with a judicial proceeding," found to justify disclosure. Rule 6(e)(2)(C)(i); *Douglas Oil Co. v. Petrol Stops Northwest*, (1979) 441 U.S. 211, 220, 99 S.Ct. 1667, 1673, 60 L.Ed.2d 156. And release for use in state, as well as in federal, judicial, and perhaps administrative, proceedings, has been authorized under this specific exception to the general rule of secrecy accorded grand jury proceedings.[12]

But the district court, while recognizing that there was authority to grant access under this "preliminarily to . . . judicial proceeding" exception, found that the Supreme Court has established certain strict requirements to be met before the court might authorize disclosure thereunder, and that the petitioners here, the State Attorney General of Virginia, and the Attorney General of the United States, had not satisfied those requirements. It is true that the Supreme Court has, as the district court pointed out, established certain standards to be used by district courts in exercising their discretionary authority to order disclosure under this "preliminarily to . . . judicial proceeding" exception when such disclosure is sought *by private parties engaged in private litigation.*[13] In that context (*i. e.*, in the application of a private litigant or party), it is true that it was the Supreme Court's holding that a party seeking disclosure must meet the burden of demonstrating that "the need for [disclosure] outweighs the public interest in secrecy . . . ."[14] To satisfy this burden, the applicant for disclosure had to show a "particularized need,"[15] which might not be a need for assistance in maintaining private litigation.[16] In evaluating that asserted need as against "the public interest in secrecy," the weight of the need, the Supreme Court concludes, will increase or diminish in proportion as the reasons supporting the public interest in secrecy increase or diminish.[17] Thus, where the grand jury proceedings are current, the reasons for secrecy will be overwhelming against the need for disclosure. *In re Bonanno*, (2d Cir. 1965) 344 F.2d 830, 834.[18] Similarly, the public interest and fundamental fairness to the "innocent accused" will operate to deny disclosure where the grand jury has returned a

12. *See* cases cited in note 9.

13. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156; *Dennis v. United States*, (1966) 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973; *United States v. Procter & Gamble Co.*, (1958) 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077.

*Dennis* was a criminal case in which the defendant sought disclosure. The court in that case, however, elaborated on the holding in *Procter & Gamble* and its conclusions were discussed in *Douglas Oil.*

14. 441 U.S. at 223, 99 S.Ct. at 1675.

15. 441 U.S. at 221, 99 S.Ct. at 1674.

16. *In re Special March 1974 Grand Jury, Etc.*, (7th Cir. 1976) 541 F.2d 166, 170, n. 3, *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773.

17. The reasons for grand jury secrecy were summarized in *United States v. Rose*, (3d Cir. 1954) 215 F.2d 617, 628–29:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation or perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

This statement of the basis for grand jury secrecy was cited with approval in *Douglas Oil Co.*, 441 U.S. at 219, n. 10, 99 S.Ct. at 1673, n. 10.

18. In this case the court said:

"Moreover, we have not been referred to a single case authorizing disclosure of a witness' testimony *during the pendency of grand jury investigations. . . .*" (Emphasis in text.)

"no bill;"[19] in fact, this is stated as one of the basic reasons for the rule of grand jury secrecy. *See United States v. Rose*, 215 F.2d 628–29. But when the grand jury has completed its work and the criminal proceedings initiated by the grand jury indictment have been concluded, the reasons for secrecy, in the opinion of the Supreme Court, are substantially diminished and correspondingly the requirement of a showing of "particularized need" as a basis for disclosure is diminished. *Illinois v. Sarbaugh*, 552 F.2d at 774, cited with approval in *Douglas Oil*, 441 U.S. at 223, 99 S.Ct. at 1675.[20]

■ It was on these principles that the district court bottomed its denial of disclosure in this proceeding, finding that the State Attorney General, before he is entitled to disclosure, must show a "particularized need" and that assistance in evaluating or maintaining another legal action such as the State Attorney General contemplates is not such a "particularized need" as is comprehended within the rule as determined in *Procter & Gamble* and *Douglas Oil, supra*. But what the district court overlooked was that we are not here concerned with a request for disclosure by a *private* party interested in *private litigation*, which was the situation in all the cases relied on by it. The requirements for disclosure, and particularly the showing of a "particularized need" as declared in these private cases are clearly inapplicable here. The applicant for

disclosure in this case is the chief law enforcement officer of a State, who has been specifically invested, as a matter of federal public policy as formally expressed in an Act of Congress, with the capacity to maintain a *parens patriae* federal antitrust suit in aid of the small consumer and, in order to encourage and assist him in such undertaking, the Congress has specifically directed the Attorney General to furnish him (the State Attorney General), to "the full extent permitted by law," all the materials in the former's files "which are or may be relevant or material to the actual or potential" *parens patriae* cause of action. The State Attorney General has been thus explicitly clothed by the Congress with this power and right because he is given a place adjunct to that of the Attorney General himself, in the scheme of enforcement of the federal antitrust laws, directed especially to protecting the small consumer.[21] When Congress has thus explicitly stated the legitimate and proper need of the State Attorney General for the disclosure of such materials, it has resolved the public interests consideration in such a case and, in so doing, it accordingly relieved that official of the requirement of establishing a "particularized need" as a threshold condition to disclosure. And this is the view taken by the only other United States Court of Appeals which has confronted this issue. *United States v. Goodrich, supra*.

19. *In re Grand Jury Subpoenas April, 1978, Etc.*, 581 F.2d at 1110; *Application of Jordan*, (S.D.W.Va.1977) 439 F.Supp. 199, 202.

20. *See also:*

    *U. S. v. Socony-Vacuum Oil Co.*, (1940) 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed. 1129; *State of Wis. v. Schaffer*, (7th Cir. 1977) 565 F.2d 961, 967; *U. S. Industries, Inc. v. United States District Court*, (9th Cir. 1965) 345 F.2d 18, 21, *cert. denied*, 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62; *Beatrice Foods Co. v. United States*, (8th Cir. 1963) 312 F.2d 29, 38, *cert. denied*, 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199.

    In *U. S. v. Socony-Vacuum Oil Co.*, 310 U.S. at 234, 60 S.Ct. at 849, the court said:

    ".  .  .  after the grand jury's functions are ended, disclosure [of grand jury materials] is

wholly proper where the ends of justice require it."

In *U. S. Industries v. United States District Court*, 345 F.2d at 21, the court put it:

"In other words, if the reasons for maintaining secrecy do not apply at all in a given situation, or apply to only an insignificant degree, the party seeking disclosure should not be required to demonstrate a large compelling need."

21. There is some similarity here with the power given by Rule 6(e) to disclose grand jury materials "to the attorneys for the government for use in the performance of their duties." In such a case, there is no need for the attorney to show a "particularized need" as a necessary predicate for disclosure of grand jury materials. *In re December 1974 Term Grand Jury Investigation*, (D.Md.1978) 449 F.Supp. 743, 750.

In reaching this conclusion we would not be understood as holding that a State Attorney General has, under the statute, an absolute right to disclosure. We hold only that, first, grand jury materials are "investigative files" within the intent of § 15f(b), 15 U.S.C., and, secondly, that the State Attorney General, in his *parens patriae* capacity, has been relieved by Congress of the initial burden of showing a "particularized need" as a basis for a grant of disclosure, and that the burden of opposing disclosure in such a situation rests on those who would deny disclosure. Whether the showing by the opponents of disclosure is sufficient in any particular case to deny disclosure remains a matter for the discretion of the district judge, which, however, may not be exercised arbitrarily but only on plainly articulated reasons. Moreover, the district court may, and should, in the interest of fairness to all parties concerned, "include [such] protective limitations on the use of the disclosed materials," as may be appropriate under the peculiar facts of each case. It is interesting that the appellants proposed in this case that any disclosure of the grand jury materials ordered should be subject to reasonable "protective limitations."

Since the district court did not apply the standards above stated for deciding the appellants' motion for disclosure, the cause must be remanded to the district court for reconsideration in the light of the standards for deciding such motion as hereinabove set forth.

*REMANDED WITH INSTRUCTIONS.*