**In re STATE OF ILLINOIS PETITION TO INSPECT AND COPY GRAND JURY MATERIALS.**

**Appeal of STATE OF ILLINOIS.**

**No. 81–1294.**

United States Court of Appeals, Seventh Circuit.

Argued June 10, 1981.

Decided Sept. 16, 1981.

Stephen P. Juech, Asst. Atty. Gen., Antitrust Div., Chicago, Ill., Mark C. Del Bianco, Dept. of Justice, Washington, D.C., for appellant.

Thomas E. Lindley, Jenner & Block, Michael B. Nash, William C. Herbert, Hopkins & Sutter, Chicago, Ill., for appellee.

Before SWYGERT, Senior Circuit Judge, CUDAHY, Circuit Judge, and EAST,* Senior District Judge.

SWYGERT, Senior Circuit Judge.

At issue in this appeal is whether section 4F(b) of Title III of the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (Hart-Scott-Rodino), 15 U.S.C. § 15f(b), authorizes the disclosure of grand jury materials to a state attorney general without the traditional showing of particularized need.[1] The district court concluded that it does not, and accordingly refused to order disclosure to the Illinois Attorney General of any materials that had been gathered or generated in connection with a grand jury criminal investigation of numerous individuals and companies, who are now defendants in a class action lawsuit brought by the State of Illinois.[2] We affirm.

I

In December 1976, the Antitrust Division of the United States Department of Justice began a grand jury investigation concerning possible violations of the federal criminal laws by persons in the construction trades in Illinois. In June 1978, a grand jury indicted eighteen corporations, thirteen persons, and a labor union for conspiring to rig bids in public sheet metal projects in metropolitan Chicago, in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and the federal mail fraud statute, 18 U.S.C. § 1341. In January 1979, the grand jury indicted eighteen corporations and five persons for a bid-rigging conspiracy in piping construction projects in the Chicago area, also in violation of 15 U.S.C. § 1 and 18 U.S.C. § 1341. Forty-eight of the defendants entered pleas of *nolo contendere* and received fines and/or sentences. Four of the nine remaining defendants were convicted. All proceedings in the criminal cases have been terminated.

Several civil class actions were filed by the State of Illinois under sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26. The State's civil actions tracked the criminal indictments, naming as additional defendants numerous persons and certain companies previously identified as unindicted co-conspirators in the criminal actions.

Pursuant to section 4F(b) of Hart-Scott-Rodino, 15 U.S.C. § 15f(b), the Illinois Attorney General sought all relevant materials in the possession of the United States Attorney General. The Department of Justice provided the Illinois Attorney General with documents totaling fewer than twenty pages. All remaining materials, the Department of Justice represented, were grand jury materials which could not be released absent a court order. In January 1980, the State of Illinois petitioned the district court, pursuant to section 4F(b) and Rule 6(e), Fed.R.Crim.P., for production of all grand jury materials.[3] The United

---

* The Honorable William G. East, United States Senior District Judge for the District of Oregon, is sitting by designation.

1. Section 4F of Title III, 14 U.S.C. § 15f, provides:

   (a) Whenever the Attorney General of the United States has brought an action under the antitrust laws, and he has reason to believe that any State attorney general would be entitled to bring an action under sections 12 to 27 of this title based substantially on the same alleged violation of the antitrust laws, he shall *promptly give written notification* thereof to such State attorney general.
   (b) To assist a State attorney general in evaluating the notice, or in bringing any action under sections 12 to 27 of this title, the Attor-

   ney General of the United States shall, upon request by such State attorney general, make available to him, to the extent permitted by law, investigative files or other materials which are or may be relevant or material to the actual or potential cause of action under sections 12 to 27 of this title.

2. The district judge did allow disclosure of those materials "originally the property of the prosecutor or government investigator and voluntarily turned over by them to the grand jury."

3. Rule 6(e), Fed.R.Crim.P., provides in pertinent part:

   Recording and Disclosure of Proceedings.

States did not object to the disclosure of grand jury materials to the State of Illinois. Certain defendants in the civil suits and others intervened to oppose the State's petition.

In January 1981, the district court denied the Illinois Attorney General access to any of the requested grand jury materials. The district judge stated that the "investigative files and other materials" language of section 4F(b) did not refer to "material acquired by and belonging to the grand jury...." He also noted that section 4F(b) states that documents are to be released only "to the extent permitted by law" and that Fed.R.Crim.P. 6(e) determines the conditions under which disclosure of grand jury materials is permissible. Because the district judge found that the petitioners had failed to meet the particularized need standard required for disclosure under Rule 6(e), access to the grand jury materials was refused.

## II

The Fourth and Ninth Circuits have considered whether section 4F(b) was intended to alter the standards for disclosure of grand jury materials under Fed.R.Crim.P. 6(e) and both have concluded that it was so intended. *United States v. Colonial Chevrolet Corp.*, 629 F.2d 943 (4th Cir. 1980), *cert. denied*, 450 U.S. 913, 101 S.Ct. 1352, 67 L.Ed.2d 337 (1981); *United States v. B. F. Goodrich Co.*, 619 F.2d 798 (9th Cir. 1980). For the reasons that follow, we respectfully disagree.[4]

The issue of disclosure of grand jury materials under section 4F(b) presents two questions of statutory construction: (1) whether grand jury materials are encompassed within the "investigative files or other materials" language of section 4F(b), and (2) assuming that they are, whether their disclosure is prohibited because section 4F(b) provides for disclosure only "to the extent permitted by law."

## A.

■ The Fourth Circuit concluded that the definition of "investigative files" included grand jury materials. Noting that the grand jury investigation is often "the most important part of the 'investigative file' in an antitrust proceeding," and that the assistance Congress intended to provide "would frequently be negligible" if grand jury materials were excluded, the court held that grand jury transcripts in the possession of the Department of Justice were "investigative files and other materials" as used in the statute. 629 F.2d at 947. The Ninth Circuit also decided that "investigative files and other materials" included grand jury materials, but it did not specify any reasons for that conclusion.

We doubt that Congress was thinking of grand jury materials when it statutorily required the United States Attorney General to make available upon request "investigative files and other materials." Beginning as we must with the statutory language itself, we note that grand jury materials are never mentioned. Moreover, the law does not permit the Department of Justice to release grand jury materials to a state attorney general "upon request" although literally that is what the petitioner's interpretation of the statute prescribes. The parties agree that a court order is required for disclosure of grand jury materials. As the Supreme Court stated in *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 398, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959):

> If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

---

(3) Exceptions.

· · · · ·

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; ...

· · · · ·

**4.** This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing *en banc* on the question of our declining to follow the Fourth and Ninth Circuits.

Any disclosure of grand jury minutes is covered by Fed.Rules Crim.Proc. 6(e) promulgated by this Court in 1946 after approval of Congress. In fact, the federal trial courts as well as the Courts of Appeals have been nearly unanimous in regarding disclosure as committed to the discretion of the trial judge. Our cases announce the same principle, and Rule 6(e) is but declaratory of it. (footnotes omitted)

Thus, while the grand jury has independence in many areas, it remains for certain purposes an appendage of the court. *United States v. Campanale*, 518 F.2d 352 (9th Cir. 1975); *United States v. Stevens*, 510 F.2d 1101 (5th Cir. 1975). Petitioner, citing *In re Grand Jury Proceedings*, 525 F.2d 151, 157 (3d Cir. 1975), asserts that the courts are without power to stay the grand jury's proceedings or to set limits on the scope of its inquiry. That proposition, whatever its worth, is irrelevant to the issue of disclosure. Had Congress intended to make a change in the law of grand jury disclosure, we would expect a provision directed to the district courts instead of to the Attorney General of the United States because it is the courts that have exclusive authority under Rule 6(e) to order disclosure of grand jury materials.[5]

We are sympathetic to the State's assertion that there exists little in the way of "investigative files and other materials" to obtain if grand jury materials are not included. Neither the State nor the United States has cited any evidence, however, that Congress knew there was little investigative material extrinsic to grand jury proceedings in antitrust investigations conducted by the Department of Justice.[6] (At oral argument we learned for the first time that antitrust investigations are from the outset conducted almost entirely before the grand jury. Prior to oral argument, we had assumed that there was far more pre-grand jury investigation. We make note of this fact in no way to criticize the Justice Department's methods but simply to indicate that widespread knowledge of that practice cannot be assumed.)

The policy in favor of grand jury secrecy is "older than our Nation itself." *Pittsburgh Plate Glass*, 360 U.S. at 399, 79 S.Ct. at 1240.[7] Therefore we find it difficult to believe that Congress—without a word of discussion—intended a general phrase like "investigative files and other materials" to include grand jury materials.[8]

---

5. It is not even clear that the United States Attorney General has any authority whatever over grand jury materials, although they are in his possession:

> Grand jury minutes and transcripts are not the property of the government's attorneys, agents or investigators.... Instead those documents are records of the court.

*United States v. Procter & Gamble Co.*, 356 U.S. 677, 684–85, 78 S.Ct. 983, 987–988, 2 L.Ed.2d 1077 (1958) (Whittaker, J., *concurring*).

6. Intervenors-appellees point out that one year earlier, Congress expressed a different understanding about the relationship between Government investigations and the grand jury:

> Federal crimes are "investigated" by the FBI, the IRS, or by Treasury agents and not by government prosecutors or the citizens who sit on grand juries. Federal agents gather and present information relating to criminal behavior to prosecutors who analyze and evaluate it and present it to grand juries.

S.Rep.No.95–354, 95th Cong., 1st Sess. 6, *reprinted in* [1977] U.S.Code Cong. & Ad.News 527, 530.

7. Post-judgment reasons for grand jury secrecy are:

> "... to encourage free and untrammeled disclosure by persons who have information with respect to the commission of crimes; [and] to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 n.10, 99 S.Ct. 1667, 1673 n.10, 60 L.Ed.2d 156 (1979) (citation omitted). Moreover, "the grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958).

8. The only reference to grand jury materials in the legislative history is strong evidence that they were specifically excluded from the coverage of section 4F(b). *See infra* at 805–806.

## B.

Our holding does not rest on the "investigative files and other materials" language because section 4F(b) contains a clear indication that Congress did not intend to make new law concerning disclosure of grand jury materials to state attorneys general. Section 4F(b) provides that investigative files and other materials are to be made available "to the extent permitted by law." 15 U.S.C. § 15f(b). "[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intent to the contrary, that language must ordinarily be viewed as conclusive." *Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

▮ The law of grand jury disclosure is set out in Fed.R.Crim.P. 6(e) which provides *inter alia* :

\* \* \* \* \* \*

(2) *General Rule of Secrecy.* [A]n attorney for the government ... shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules.

\* \* \* \* \* \*

(3) *Exceptions.*

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; ....

Rule 6(e)(3)(C)(i) does not set forth the standards for determining when release should be made. As consistently interpreted by the Supreme Court, however, Rule 6(e)(3)(C)(i) specifically prohibits the disclosure of grand jury materials except upon a showing of "particularized need." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979); *Dennis v. United States*, 384 U.S. 855, 872, 86 S.Ct. 1840, 1850, 16 L.Ed.2d 973 (1966); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958).

The Fourth and Ninth Circuits ruled that under section 4F(b), state attorneys general are relieved of the requirement of establishing a particularized need in order to obtain disclosure. *Colonial*, 629 F.2d at 950 (4th Cir.); *B. F. Goodrich*, 619 F.2d at 801 (9th Cir.).[9] The primary basis for those decisions, and for the position urged by the State and the United States here, is that Congress explicitly recognized in Hart-Scott-Rodino "the important place State attorneys general occupy in Congress's scheme for antitrust enforcement." *B. F. Goodrich*, 619 F.2d at 801. Moreover, the State attempts to distinguish the Supreme Court cases in which the particularized need standard was articulated on the basis that there disclosure was sought by private parties rather than by a state official. *Douglas Oil, Dennis, Proctor & Gamble.* In section 4F(b), the State asserts, Congress resolved the balance between the need for disclosure and interest in grand jury secrecy in favor of disclosure without a particularized need.

We do not agree with the State's contention. Section 4F(b) requires on its face that files be made available only "to the extent

---

**9.** The Fourth Circuit held that there was no absolute right to disclosure, but that "the burden of opposing disclosure in such a situation rests on those who would deny disclosure." *United States v. Colonial Chevrolet Corp.*, 629 F.2d 943, 951 (4th Cir. 1980).

Protective orders, both the Fourth and Ninth Circuits held, were sufficient to uphold the interests of grand jury secrecy, *Colonial*, 629 F.2d at 951; *United States v. B. F. Goodrich Co.*, 619 F.2d 798, 801 (9th Cir. 1980). The State asserts that protective orders will be sufficient in our case as well. That protective orders would result in much secrecy is doubtful. As the United States itself noted, disclosure to the State of Illinois would in all likelihood lead to disclosure to the civil defendants "under the liberal discovery provisions of the Federal Rules of Civil Procedure." (Brief of United States.) Similarly, as the intervenors-appellees point out, once the civil defendants have obtained disclosure, the private plaintiffs would seek the grand jury materials on the same basis.

permitted by law." It is clear that at the time the rule was enacted, the relevant law included both Rule 6(e) and the Supreme Court decisions requiring a particularized need. *Dennis v. United States; Pittsburgh Plate Glass Co. v. United States; United States v. Procter & Gamble Co.*[10] The State argues that Congress intended district courts faced with a section 4F(b) request to comply with the language but not the Supreme Court's interpretation of Rule 6(e)(3)(C)(i). In short, the State suggests that Congress intended disclosure to be made only when "directed by a court . . . in connection with a judicial proceeding," Rule 6(e)(3)(C)(i), but at the same time meant to dispense with the showing of "particularized need" required by the Supreme Court. *Pittsburgh Plate Glass,* 360 U.S. at 400, 79 S.Ct. at 1241; *Procter & Gamble,* 365 U.S. at 683, 78 S.Ct. at 986. The problem with that reasoning is that, as Congress well knew, a Supreme Court decision is as much the "law" as is a judicial procedural rule approved by Congress and promulgated by the Supreme Court.

The State here, like the Fourth Circuit in *Colonial,* attempts to distinguish the Supreme Court's decisions by pointing out that the Court has never held that a particularized need is required when a state official is seeking disclosure of grand jury materials. Thus, it is argued, dispensing with the particularized need requirement when a state attorney general requests disclosure under section 4F(b) is not actually prohibited by existing law. That argument must fail for two reasons. First, this circuit has considered whether to release grand jury

materials to a state attorney general, and we refused to permit disclosure precisely because there was a failure to show a compelling and particularized need. *In re Holovachka,* 317 F.2d 834 (7th Cir. 1963). The petitioner refers us to *In re Special February 1971 Grand Jury v. Conlisk,* 490 F.2d 894 (7th Cir. 1973), in which disclosure of grand jury materials to a Chicago police board was permitted. *Conlisk* does not support the petitioner's argument, however, because there we applied the particularized need standard. 490 F.2d at 897. The other cases cited for the proposition that existing law permits disclosure on a lesser showing are inapposite.[11]

Second, the issue in this case is not whether disclosure on less than particularized need could ever be ordered by a court consistent with existing law, but whether section 4F(b) is "a Congressional directive to the courts that grand jury materials should be disclosed to state attorneys general, without a showing of particularized need. . . ." (Reply brief of the State.) The phrase "to the extent permitted by law" certainly does not indicate that Congress intended to make important new law in the area of disclosure of grand jury material; instead it connotes the existing law.[12] We are certain that if Congress intended to create the change that the petitioner suggests, it would have said so. It is simply impossible to believe that the " 'indispensable secrecy of grand jury proceedings,' " *Procter & Gamble,* 356 U.S. at 682, 78 S.Ct. 983, 985, 2 L.Ed.2d 1077 (citation omitted), would have been altered by Congress *sub silentio.*

---

**10.** *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), was decided after the enactment of section 4F(b).

**11.** In *In re Grand Jury Subpoenas, April 1978,* 581 F.2d 1103 (4th Cir. 1978), *cert. denied,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979), the grand jury materials were disclosed under one of the statutory exceptions to Rule 6(e), permitting disclosure to federal government attorneys. In *In the Matter of Disclosure of Testimony Before the Grand Jury,* 580 F.2d 281 (8th Cir. 1978), the compelling and particularized need standard was applied. The court in *United States v. Interstate Dress Carriers, Inc.,*

280 F.2d 52 (2d Cir. 1960), concluded that the inspection at issue did not constitute a disclosure of matters occurring before the grand jury. *Doe v. Rosenberry,* 255 F.2d 118 (2d Cir. 1958), only addressed the issue of whether the release of grand jury materials was "preliminary to . . . a judicial proceeding" as required by Rule 6(e), Fed.R.Crim.P., and did not discuss any judicially-prescribed standard for disclosure.

**12.** It is undisputed that no other provision of Hart-Scott-Rodino refers to the right of state attorneys general to obtain Justice Department files or other materials.

Any lingering doubt as to whether disclosure of grand jury materials was contemplated by Congress is dispelled by the only reference to grand jury materials in the legislative history of section 4F(b). To Senator Roman Hruska's objection to section 4F(b) on the basis that it could turn the Department of Justice into a "massive document distribution center," 122 Cong.Rec. 29144 (1976), Senator James Abourezk, Senator Floor Manager for the bill, replied:

> The section specifically limits the Attorney General's power to release documents to whatever his powers are under existing law. *Under existing law, he cannot turn over materials given in response to a grand jury demand* or to a civil investigative demand.

122 Cong.Rec. 29160 (1976) (emphasis added).[13] A statement by one of the sponsors of the legislation "deserves to be accorded substantial weight in interpreting the statute." *FEA v. Algonquin SNG, Inc.*, 426 U.S. 548, 564, 96 S.Ct. 2295, 2304, 49 L.Ed.2d 49 (1976); *accord, National Woodwork Mfrs. Ass'n v. NLRB*, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967); *see also Browder v. Tipton*, 630 F.2d 1149, 1151–52 (6th Cir. 1980) (holding that a statement by the Manager of a bill is entitled to "great weight").

The only other relevant legislative history is a House Report on an earlier version of section 4F(b) which explained that Justice Department files were to be made available "to the State attorneys general 'to the extent permitted by law.' This means that the files are to be made available except where specifically prohibited." H.R.No.94–499, 94th Cong., 2d Sess. 17 (1975), *reprinted in* [1976] U.S.Code Cong. & Ad.News, at

2586–87. That statement is completely consistent with Senator Abourezk's remarks, because existing law does prohibit the release of grand jury materials unless there is a showing of particularized need.[14]

Finally, it is argued that the purpose of Hart-Scott-Rodino mandates a conclusion that Congress "relieved [a state attorney general] of the requirement of establishing a 'particularized need' as a threshold condition to disclosure." *Colonial*, 629 F.2d at 950 (4th Cir. 1980). The Ninth Circuit noted that "Title III of the Hart-Scott-Rodino Antitrust Improvements Act was intended to create effective state antitrust enforcement and places the State attorneys general on a different footing than private parties seeking redress for antitrust violations." *B. F. Goodrich*, 619 F.2d at 800–01. The State contends that the "different footing" afforded state attorneys general demonstrates that Congress intended to waive the particularized need requirement for disclosure of grand jury material. We cannot agree that because Congress intended to enhance the role of state attorneys general in antitrust law enforcement, section 4F(b) must be interpreted to alter the standard for disclosure of grand jury materials. In *In re Grand Jury Investigation of Cuisinarts, Inc.*, 516 F.Supp. 1008 (D.Conn.1981), the district judge explained in detail why although a state attorney general is placed on a new footing vis-a-vis *parens patriae* actions, the conclusion reached by the Fourth and Ninth Circuits is incorrect. Because we agree with his analysis, we quote from that opinion at some length here:

> Having reviewed the legislative history of Hart-Scott-Rodino, the court concludes that, as a general matter, the statute sweeps less broadly, and thus elevates the

**13.** We find the Fourth Circuit's construction of Senator Abourezk's remarks to be strained at best. *See Colonial*, 629 F.2d at 947. Nothing in the statute indicates that the Senator was referring to the necessity for a court order pursuant to Rule 6(e) but not to the standards under which disclosure would be ordered.

**14.** A leading commentary on the legislative history of section 4F(b) has concluded that under that provision, the United States Attorney General is required

to provide [state attorneys general] with investigative files and other materials, except for materials obtained through grand jury proceedings . . ., which may not be provided. Kintner, Griffin & Goldston, *The Hart-Scott-Rodino Antitrust Improvements Act of 1976: An Analysis*, 46 Geo.Wash.L.Rev. 1, 30 (1977).

The commentators also note that the position asserted by the Department of Justice is "in conflict with the legislative history." *Id.*

state role in antitrust enforcement to a lesser extent, than the petitioners assert. By authorizing states to bring civil antitrust actions, as *parens patriae*, Hart-Scott-Rodino does create a place for state governments in the enforcement of federal antitrust laws. Those *parens patriae* actions were intended, however, to fill only a narrow gap in the prior scheme of enforcement. The draftsmen of Hart-Scott-Rodino noted two technical problems which limited the usefulness, and thus deterred the filing, of private consumer class actions. The first problem was the difficulty, under Rule 23, Fed.R. Civ.P., of gaining class certification, *see* [H.R.Rep.No.499, 94th Cong., 2d Sess. 6–8, *reprinted in*] [1976] U.S.Code Cong. & Ad.News 2576–2577; the second was the difficulty of "managing" such an action, once a class has been certified, *id.* at 2583–2584. [footnote omitted.] Hart-Scott-Rodino attempts to solve both problems.

The concept of a *parens patriae* suit had long been known at common law. In the United States, it had evolved into a means by which a state could "sue in its quasi-sovereign capacity on behalf of its citizens to prevent interference with the flow of goods or natural resources" into the state or "to prevent acts of pollution." Kintner, Griffin & Goldston, *The Hart-Scott-Rodino Antitrust Improvements Act of 1976: An Analysis* ("Hart-Scott-Rodino: An Analysis"), 46 Geo. Wash.L.Rev. 1, 18–19 (1977). Although the *parens patriae* action was recognized to be the most efficient means of overcoming the obstacles to private class actions, judicial decisions in the early 1970's had limited the ability of states to bring such suits to remedy antitrust violations. *Hart-Scott-Rodino: An Analysis* 19; *see Hawaii v. Standard Oil Co.*, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972); *California v. Frito-Lay, Inc.*, 474 F.2d 774 (9th Cir.), *cert. denied*, 412 U.S. 908, 93 S.Ct. 2291, 36 L.Ed.2d 974 (1973). Reacting to these decisions, *see* [H.R.Rep.No. 499, 94th Cong., 2d Sess. 7–9, *reprinted in*] [1976] U.S.Code Cong. & Ad.News

2577–2578, Congress, in Hart-Scott-Rodino, authorized the states to proceed as *parens patriae* in antitrust cases. [The House Report noted that the provision permitting *parens patriae* actions by state attorneys general was "the heart" of the bill. H.R.Rep.No.499, 94th Cong., 2d Sess. 9 [1975], *reprinted in* [1976] U.S. Code Cong. & Ad.News at 2578.] Congress solved the problem created by Rule 23, Fed.R.Civ.P., simply by making clear that class certification would not be required in *parens patriae* actions, *see* 15 U.S.C. § 15c(a). It solved the chief problem in managing such actions by permitting damages to be computed through aggregation techniques, *see* 15 U.S.C. § 15d.

Discovery problems were not of apparent concern to the draftsmen of the *parens patriae* provisions. With respect to discovery issues, the draftsmen noted only that the individual consumer lacked the investigative resources to disclose a possible conspiracy in violation of the antitrust laws. *See* [H.R.Rep.No.499, 94th Cong., 2d Sess. 6–7, *reprinted in*] [1976] U.S.Code Cong. & Ad.News 2575–2576. The draftsmen clearly recognized that either a class action or a *parens patriae* action could solve this problem by putting the resources of the class or the state government to work in discovery. Thus the only apparent concern of the draftsmen with respect to discovery was that of overcoming the individual litigant's lack of financial resources. Significantly, the reports of the relevant Congressional committees never mention as a problem in antitrust enforcement any substantive limitations on discovery imposed by the Federal Rules of Civil Procedure or the Federal Rules of Criminal Procedure.

Thus Hart-Scott-Rodino is but "a *limited* legislative response to [a] perceived loophole in antitrust liability." *Hart-Scott-Rodino: An Analysis* 19–20 (emphasis supplied). It provides specific, carefully tailored solutions to technical problems of antitrust enforcement. There is no indication that its draftsmen

ever regarded the existing rules of procedure concerning discovery as a problem in such enforcement, or that they intended to modify, no less contravene, the existing rules.

*In re Grand Jury Investigation of Cuisinarts, Inc.,* 516 F.Supp. 1008 (D.Conn.1981).

The State contends that if Congress did not intend to relieve state attorneys general of the particularized need requirement, section 4F(b) does no more than codify what was already often the informal practice of the United States Attorney General to make his files available to state attorneys general. Even if section 4F(b) does not increase the amount of material exchanged, a requirement that the Department of Justice make available all relevant or potentially relevant material within its legal authority to disclose is not insignificant. That the provision would be more powerful were grand jury materials included and the particularized need requirement waived is beside the point. There is nothing in the language of the statute or its legislative history to lead us to the conclusion the State advocates. Instead of purporting to make new law concerning grand jury disclo-

sure, the statute states that the investigative files and other materials shall be made available only *"to the extent permitted by law."* (emphasis added) The legislative history contains a strong indication that section 4F(b) was not to alter existing law concerning disclosure of grand jury materials. We therefore conclude that section 4F(b) does not relieve the Illinois Attorney General of the obligation to show particularized need in order to obtain disclosure here.

The judgment of the district court is affirmed.

EAST, Senior District Judge, dissenting:

I respectfully dissent. The major purpose or goal of § 4F(b) is to put the several states more readily into the antitrust business by lending them the federal investigative work product regarding antitrust violations.[1] It is arguable whether congressional intent to open the grand jury's investigative record to a requesting and proper state is directly stated in the legislation. Nevertheless such congressional intent is readily implied.[2]

1. Notwithstanding remarks made during the Senate debate, the House Committee Report states that the Act provides

'a new federal antitrust remedy which will permit the State attorneys general to recover monetary damages on behalf of State residents injured by violations of the antitrust laws. The [Hart-Scott-Rodino Act] is intended to compensate the victims of antitrust offenses, to prevent antitrust violators from being unjustly enriched, and to deter future antitrust violations.' H.R.Rep.No.94-499, 94th Cong., 1st Sess. 3, reprinted in [1976] U.S.Code Cong. and Admin.News, p. 2572.

\* \* \* \* \* \*

These statements and the Act itself indicate that Congress intended to make grand jury materials available to State attorneys general except where specifically prohibited and without a showing of particularized and compelling need.... [The] Act was intended to create effective state antitrust enforcement and places the State attorneys general on a different footing than private parties seeking redress for antitrust violations. *United States v. B. F. Goodrich Co.,* 619 F.2d 798, 800-01 (9th Cir. 1980).

2. Section 4F(b) was included in the final enactment of Title III of the Hart-Scott-Rodino Anti-

trust Improvements Act of 1976 at the instance of the House conferees. *See* 122 Cong.Rec. at 29, September 7, 1976. The House expressed its intent in a report on an earlier, substantially similar version of the Act:

Section 4F promotes *parens patriae* actions as a major aspect of antitrust enforcement by encouraging Federal-State cooperation. The section provides that whenever the United States has brought suit in its proprietary capacity under § 4A of the Clayton Act, and the U. S. Attorney General believes that the same antitrust violation may have given rise to potential *parens patriae* claims, he shall notify the appropriate State attorneys general. Whenever a State attorney general so requests, in order to evaluate the notice from the U. S. Attorney General or in order to bring a *parens patriae* action, section 4F(b) requires the U. S. Attorney General to make the Justice Department's investigative files available to the State attorneys general 'to the extent permitted by law.' *This means that the files are to be made available except where specifically prohibited.*

*Section 4F(b) reflects the committee's desire that the Federal Government cooperate fully with State antitrust enforcers.*

The benefits of increases in Federal-State cooperation and coordination of antitrust en-

The secrecy of the grand jury proceedings so reverently kept may be adequately preserved by an appropriate protective order of the District Court granting the release of any of the grand jury's record.

I am persuaded by the interpretation of the legislation in *United States v. Colonial Chevrolet Corp.*, 629 F.2d 943 (4th Cir. 1980), *cert. denied*, 450 U.S. 913, 101 S.Ct. 1352, 67 L.Ed.2d 337 (1981), and *United States v. B. F. Goodrich Co.*, 619 F.2d 798 (9th Cir. 1980), notwithstanding the majority's view to the contrary. In order to resolve the conflict between the circuits which has now arisen, I would urge Congress to enact appropriate legislation clearly setting forth its intention in the premises.

forcement are obvious, and are achieved in H.R. 8532 without the expenditure of additional Federal funds.
H.R.No.94–499, 94th Cong., 2d Sess. 17 (1975), reprinted in 1976 U.S.Code Cong. & Admin. News, at pp. 2586–87. (Emphasis added.)

The need for access to grand jury materials is greater for states than for ordinary individuals because of the important place State attorneys general occupy in Congress's scheme for antitrust enforcement. This need is met by section 4F(b) which, in our view, impliedly directs the Attorney General of the United States to disclose grand jury materials to State attorneys general without the showing of particularized and compelling need which is normally required by Rule 6(e). *B. F. Goodrich Co.*, 619 F.2d at 801.