Anthony J. VALENTI

v.

**UNITED STATES DEPARTMENT OF JUSTICE et al.**

Civ. A. No. 80–1242.

United States District Court,
E. D. Louisiana.

Dec. 19, 1980.

Julian R. Murray, Jr., New Orleans, La., for plaintiff.

Roy F. Blondeau, Jr., Asst. U. S. Atty., E. D. La., New Orleans, La., for defendants.

SEAR, District Judge.

Plaintiff Anthony J. Valenti is a former employee of the Jefferson Parish Sheriff's Office. On November 2, 1978 he testified before a federal grand jury convened in the Eastern District of Louisiana concerning alleged illegal wiretapping conducted by the sheriff's office. A transcript of plaintiff's testimony was made by a court reporter and placed in the custody of the United States Attorney for the Eastern District of Louisiana pursuant to Fed.R.Crim.Pro.

6(e)(1). The grand jury eventually returned an indictment,[1] and after the resulting criminal prosecution was concluded Valenti brought this action in which he seeks a transcript of his testimony before the grand jury. The plaintiff bases his action on the Freedom of Information Act, 5 U.S.C. § 552, and Fed.R.Crim.Pro. 6(e). Defendants are the United States Department of Justice, the Attorney General of the United States, and the United States Attorney for the Eastern District of Louisiana. The action is before me for decision at this time on the parties' cross–motions for summary judgment. For purposes of these motions, the parties have stipulated to the following facts:

(1) In a letter dated December 27, 1979 directed to the United States Attorney for the Eastern District of Louisiana, Valenti made a request for information pursuant to the Freedom of Information Act [FOIA]. The requested information included "[a] copy of my grand jury testimony given under oath in the matter of the *United States versus Alwyn* [sic] *J. Cronvich*, commonly called the wiretap probe." *See* defendant's exhibit A.

(2) The Office of the United States Attorney for the Eastern District of Louisiana transmitted Valenti's request to the Executive Office for United States Attorneys pursuant to 28 C.F.R. § 16.3 in a letter dated January 21, 1980. *See* defendant's exhibit B.

(3) By letter of February 15, 1980, the Executive Office for United States Attorneys referred Valenti's request for information to the Federal Bureau of Investigation for a direct response. *See* defendant's exhibit C.

(4) The Executive Office for United States Attorneys, by letter dated February 15, 1980, sent Valenti a certification of identity form for his completion pursuant to 28 C.F.R. § 16.41(b). The letter also advised Valenti that his request had been forwarded to the FBI for a direct response to him. *See* defendant's exhibit D.

(5) By letter dated February 14, 1980, counsel for Valenti requested the Executive Office for United States Attorneys to expedite the processing of Valenti's request. *See* defendant's exhibit E.

(6) Valenti returned the completed certification of identity form to the Executive Office for United States Attorneys by letter dated February 26, 1980. *See* defendant's exhibit F.

(7) By letter of May 15, 1980, the Executive Office for United States Attorneys responded to Valenti's FOIA request refusing to provide him with a copy of his grand jury testimony. *See* defendant's exhibit G.

(8) On the same day, the Executive Office directed a memorandum to the FBI referring certain material requested by Valenti to the FBI for direct response to Valenti. *See* defendant's exhibit H.

(9) Each step in the processing of Valenti's request was consistent with the established procedures adopted by United States Attorneys concerning response to parties seeking information pursuant to FOIA. Any delay in processing the request was attributable solely to the limited resources available to the Executive Office for United States Attorneys and the tremendous volume of FOIA requests received by the office.

(10) The only material requested by Valenti that was withheld is a transcript of Valenti's testimony before the grand jury. The grand jury transcript was withheld, according to the defendants, pursuant to the disclosure exemption provided in 5 U.S.C. § 552(b)(3) in conjunction with Fed.R.Crim.Pro. 6(e) since release of the document, in the government's view, would violate the secrecy provisions of Rule 6(e).

(11) The routine practice of the United States Attorney's Office for the Eastern District of Louisiana is, and has been, to supply potential trial witnesses with tran-

1. *United States v. Alwynn J. Cronvich*, Criminal No. 79–173 (Eastern District of Louisiana, Section H).

scripts of their testimony before the grand jury in order to refresh their recollection and aid them in preparing for cross–examination when that testimony is available to opposing counsel pursuant to the Jenks Act, 18 U.S.C. § 3500. These transcripts are routinely provided without seeking or receiving an order from the court pursuant to Rule 6(e).[2]

Plaintiff contends that he is entitled to a transcript of his grand jury testimony pursuant to FOIA or Fed.R.Crim.Pro. 6(e), and he argues that this is a case of first impression in the Fifth Circuit. Defendants contend that FOIA applies only to "agencies" of the United States, and FOIA itself specifically excludes the courts of the United States from the definition of "agency." 5 U.S.C. § 551(1)(B). Since grand jury records are actually records of the court and not of the Justice Department, according to the defendants' argument, they are exempt from mandatory FOIA disclosure. Alternatively, defendants argue that even if plaintiff's grand jury transcript is an "agency record" within the meaning of FOIA, it is exempt from disclosure by 5 U.S.C. § 552(b)(3), which excludes from FOIA disclosure any matter "specifically exempted from disclosure by statute." Defendants argue that Fed.R.Crim.Pro. 6(e) is such a statute.

 The FOIA requires that "[e]ach *agency* shall make available to the public information" of a variety of kinds consisting mainly of *agency* records. 5 U.S.C. § 552(a)(3) [emphasis added]. In defining the term "agency," the Act itself specifically exempts "the courts of the United States" from the definition. 5 U.S.C. § 551(1)(B). The grand jury has traditionally been characterized as an arm of the court. In *Brown v. United States*, 359 U.S. 41, 49, 79 S.Ct. 539, 546, 3 L.Ed.2d 609 (1959), the Supreme Court said that "[a] grand jury is clothed with great independence in many areas, but it remains an ap-

pendage of the court, powerless to perform its investigative function without the court's aid. . . ." *Accord: Levine v. United States*, 362 U.S. 610, 617, 80 S.Ct. 1038, 1043, 4 L.Ed.2d 989 (1960). The Fifth Circuit has said that a grand jury is "essentially an agency of the court, and exercises its powers under the authority and supervision of the court." *United States v. Stevens*, 510 F.2d 1101, 1106 (5th Cir. 1975); *accord: United States v. Campanale*, 518 F.2d 352, 366 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976); *but see United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1978) [grand jury is an independent, pre-constitutional institution which should not be captive to any of the three branches of government].

Because the grand jury is an appendage of the court, the records of the grand jury are court records, *see United States v. Penrod*, 609 F.2d 1092, 1097 (4th Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980), not agency records, and are expressly exempt from the mandatory disclosure requirements of the FOIA. Courts have consistently held that records and documents generated by the courts are not subject to mandatory disclosure under the FOIA. In *Warth v. Department of Justice*, 595 F.2d 521, 523 (9th Cir. 1979), for example, the court held that a trial transcript is a court document, not an agency record subject to FOIA disclosure, even when the Justice Department holds the transcript. In *Cook v. Willingham*, 400 F.2d 885, 885–86 (10th Cir. 1968), the court ruled that a presentence report prepared for the court's use was a court record, not an agency record subject to FOIA disclosure. Finally, in a brief *per curiam* opinion issued in *Thomas v. United States*, 597 F.2d 656 (8th Cir. 1979), the Eighth Circuit held that a habeas corpus petitioner was not

2. Plaintiff submitted this particular stipulated fact as an addition to the first 10 stipulated facts attached to the defendants' memorandum. In a supplemental memorandum to the court, counsel for the defendants denied plaintiff's offered stipulation on this fact and questioned the relevance of the proposed stipulation. At oral argument on October 8, 1980, however, counsel for defendants agreed to stipulate to this point only for purposes of these motions.

entitled to receive copies of grand jury minutes and a transcript of grand jury proceedings under the FOIA. The court flatly held that the "Freedom of Information Act established no right to grand jury proceedings." *Id.* at 657.

Plaintiff argues that while the transcript in question in the present case may "technically" be a judicial record, it should be considered an agency record subject to disclosure for FOIA purposes because the Justice Department exercises substantial "control" over the transcript. Relying on *Goland v. Central Intelligence Agency*, 607 F.2d 339 (D.C.Cir.1978), cited in *Warth v. Department of Justice*, 595 F.2d 521, at 523 n.7 (9th Cir. 1979), a case that dealt with congressionally-generated documents, plaintiff contends that a document exempt from FOIA disclosure might "become an agency record" if under all the facts of the case, the document has passed from the control of the court and become "property subject to the free disposition of the agency with which the document resides." 595 F.2d at 523 n.7. Plaintiff argues in this case that even if a grand jury proceeding is a judicial proceeding, the Justice Department exercises such substantial control over plaintiff's grand jury transcript that it has become an agency record for FOIA purposes. I disagree. It is true that Rule 6(e)(1) places any notes, recording, or transcript prepared from the grand jury proceedings "in the custody or control of the attorney for the government." The provision does not, however, change the essential nature of the transcript from a court record to an agency record, and the mere physical location of the transcript in the office of the local United States Attorney does not render it an agency record for FOIA purposes. *See Kissinger v. Reporters' Committee for Freedom of the Press*, 445 U.S. 136, 100 S.Ct. 960, 972, 63 L.Ed.2d 267 (1980). Plaintiff has noted in his memorandum several factors he contends are indicia of the type of control exercised by the Justice Department over grand jury transcripts. He notes that it is the Justice Department which hires and pays the court reporter and maintains possession of the transcript after the court reporter delivers the transcript to the United States Attorney. These factors merely illustrate that the local United States Attorney is the physical custodian of grand jury transcripts; his use of those records is limited by Rule 6(e), and the court retains ultimate control over the documents. Plaintiff's grand jury transcript is a court record generated by an arm of the court, and it remains a court record despite the fact that the local United States Attorney is its physical custodian. I therefore conclude that plaintiff is not entitled to receive a copy of his grand jury testimony as a matter of right under the FOIA. Because I find that the transcript is a court record, it is unnecessary for me to consider whether Rule 6(e) is a statute which specifically exempts this transcript from disclosure under 5 U.S.C. § 552(b)(3).

In arguing these cross–motions for summary judgment, the plaintiff and the defendants have concentrated on the question of whether plaintiff is entitled to a transcript of his grand jury testimony as a matter of right under the FOIA. However, since the jurisdictional allegation of plaintiff's complaint cites Fed.R.Crim.Pro. 6(e) as one of the bases for his action, I must address the issue of whether plaintiff is entitled to a copy of his grand jury testimony pursuant to Rule 6(e) and the court's supervisory power to lift the traditional veil of grand jury secrecy under certain circumstances. Plaintiff has alluded to this possibility at times in his memorandum, particularly when he argues that the secrecy provisions of Rule 6(e) are not applicable to grand jury witnesses themselves and that by seeking only his *own* testimony, plaintiff is not seeking any testimony that is secret as to himself.

■ Fed.R.Crim.Pro. 6(e)(3)(C) allows government attorneys to disclose grand jury proceedings (a) when directed by the court in connection with a judicial proceeding or (b) when permitted by a court at the request of a defendant. A witness before a grand jury has no inherent right to a transcript of his testimony. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395,

401, 79 S.Ct. 1237, 1241–42, 3 L.Ed.2d 1323 (1959); *In re Bianchi*, 542 F.2d 98, 100 (1st Cir. 1976); *In re Grand Jury Proceedings*, 73 F.R.D. 647, 650 (M.D.Fla.1977). It is within the discretion of the court, however, to provide a witness with such a transcript under Rule 6(e) where the witness demonstrates a particularized need for the transcript that outweighs the historical policy of grand jury secrecy. *See Douglas Oil Co. of Calif. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 1673–75, 60 L.Ed.2d 156 (1979); *Pittsburgh Plate Glass Co. v. United States, supra*, 360 U.S. at 400, 79 S.Ct. at 1241; *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958).

■ In the recent *Douglas* case, *supra*, the Supreme Court was not confronted with a request for disclosure of grand jury testimony to the witness himself, but the general principles and concepts reviewed by the Court are helpful and applicable in this case. In *Douglas*, the Court "emphasize[d] that a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion." 99 S.Ct. at 1675. The Court noted that the distinct interests served by grand jury secrecy include (1) encouraging potential grand jury witnesses to come forward voluntarily and to testify fully and frankly without fear of retribution; (2) reducing the risk that those about to be indicted will flee or attempt to influence individual grand jurors; and (3) assuring that individuals accused and investigated but found innocent by the grand jury will be spared public ridicule. *Id.* at 1673. The Court recognized that courts have been reluctant to lift the veil of grand jury secrecy unnecessarily, but in some situations, justice may demand discrete disclosure. *Id.* In general, parties seeking grand jury transcripts pursuant to Rule 6(e) "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id.* at 1674. My duty is to weigh competing interests and balance the overall need for grand jury secrecy against the plaintiff's need for disclosure in light of the circumstances of this case and the standards announced by the Supreme Court.

■ In this case, plaintiff has provided me with no reason why he should be provided with a transcript of his grand jury testimony. He has shown no particularized need for the transcript, and has not demonstrated that he needs the material in connection with another judicial proceeding. In short, plaintiff simply argues that he *desires* a copy of his testimony, but he articulates no specific need for the transcript. Balanced against plaintiff's apparent absence of need for such a transcript are the interests served by grand jury secrecy outlined in *Douglas, supra*. Since this case involves a witness who is requesting his own testimony and since the criminal prosecution resulting from the grand jury investigation has been completed, the first two interests discussed in *Douglas* are not implicated in this case. Only the third interest—assuring that individuals accused and investigated but found innocent by the grand jury will be spared public ridicule—has some relevance to this case. I find that the integrity and efficacy of grand jury proceedings is best maintained when the historical policy of grand jury secrecy is undermined only where there is a demonstrable need to lift the traditional veil of secrecy. In many cases, plaintiffs will succeed in demonstrating a need for disclosure that outweighs the interests in grand jury secrecy. *See, e. g., Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972); *In re Braniff Airways, Inc.*, 390 F.Supp. 344 (W.D.Tex. 1975). In this case, however, plaintiff has failed to demonstrate any need that would justify departure from the long-established policy of grand jury secrecy. Plaintiff has cited no case in which a court granted a grand jury transcript to a witness who sought disclosure of his own testimony without a showing of particularized need, and I am aware of only one case in which disclosure without such a showing was allowed. *See In re Russo*, 53 F.R.D. 564, 572

(C.D.Calif.1971). In light of the weight of the authority and the general guidance of the Supreme Court in *Douglas, supra,* however, I find that the better approach is to require the party seeking disclosure of traditionally secret grand jury matters to make a showing of particularized need before the disclosure is ordered. Plaintiff has failed to do so in this case.

Accordingly, defendants' motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied. Plaintiff's action is dismissed, each party to bear its own costs. Let judgment be entered accordingly.

See also, D.C., 498 F.Supp. 396.

**TAUNTON MUNICIPAL LIGHTING PLANT, Plaintiff,**

v.

**QUINCY OIL, INC., Defendant.**

**TAUNTON MUNICIPAL LIGHTING PLANT, Plaintiff,**

v.

**DEPARTMENT OF ENERGY et al., Defendants.**

Civ. A. Nos. 78–2233–C, 79–829–C.

United States District Court,
D. Massachusetts.

Dec. 22, 1980.

Timothy H. Gailey and, David S. Mortensen, Hale & Dorr, Boston, Mass., for defendant in No. 78–2233–C.

Bonnie S. Blair and Cynthia Schneider Bogorad, Spiegel & McDiarmid, Washington, D. C., Edward A. Roster, Roster & Antine, Taunton, Mass., Philip M. Cronin, Withington Cross Park & Groden, Boston, Mass., for plaintiff.

Stuart E. Schiffer, Asst. Atty. Gen., Barbara L. Gordon, C. Max Vassanelli, Dept. of Justice, Washington, D. C., for Federal defendants.

David S. Mortensen, J. Barry Morrissey, Timothy H. Gailey, Hale & Dorr, Boston, Mass., for intervenor Quincy Oil, Inc.

Mark Kreitman, David Engles, U. S. Dept. of Energy, Regulatory Litigation Div., Washington, D. C., for Federal defendants AUSA Carolyn Grace.

## MEMORANDUM

CAFFREY, Chief Judge.

This decision is the latest in a series of decisions by this Court involving a very narrow, yet highly controversial issue, the application of Federal Energy Administration (now DOE) mandatory petroleum price regulations to variable-price petroleum supply contracts. *Quincy Oil, Inc. v. FEA*, 468 F.Supp. 383 (D.Mass.1979), and 472 F.Supp. 1233 (D.Mass.1979), *aff'd*, 620 F.2d 890 (TECA 1980); *Taunton Municipal Lighting Plant v. DOE*, 472 F.Supp. 1231 (D.Mass. 1979), *aff'd on other grounds*, 620 F.2d 896 (TECA 1980). On August 26, 1980 this Court, 498 F.Supp. 396, considered two motions for summary judgment, in C.A. No. 78–2233–C and C.A. No. 79–829–C, as crossmotions for summary judgment, since both cases focused on the validity of Department of Energy (DOE) Ruling 1979–1. This Court upheld the validity of the Ruling and approved the DOE's withdrawal of a Remedial Order previously issued against Quincy Oil. The Court reserved judgment, however, on the cross-motions for summary judgment, pending more complete briefing on the application of DOE Ruling 1979–1 to the specific facts at issue here.

Briefs have now been submitted and this Court is prepared to rule on the cross-motions for summary judgment.

As a result of prior decisions the following factual and legal conclusions are presently undisputed. Quincy Oil entered into a one-year variable price contract for the sale of No. 6 fuel oil to Taunton Municipal Lighting Plant (Taunton) on April 18, 1972. The contract extended from May 1, 1972 to April 30, 1973. The same parties signed a second contract with similar terms one year later, on April 23, 1973. The second contract extended from May 1, 1973 to April 30, 1974 and included a price approximately $.50 more per barrel than was charged in the 1972 contract. After the second contract had been signed but before shipments had been made on the new terms, Taunton chose to exercise its right under the 1972 contract and extend those lower-priced terms for three additional months, postponing the terms of the new 1973 contract until August 1973.

Throughout this period of time the government issued various price regulations under the Economic Stablization Act of 1970 (ESA), 12 U.S.C. § 1904, and the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. § 751 *et seq.* The parties disagree over the base price which Quincy Oil used or should have used in the sale of fuel oil to Taunton between November 1, 1973 and May 31, 1976 under 10 C.F.R. § 212.93(a).

That regulation, as applied to Quincy Oil, provided that the seller "may not charge a price . . . which exceeds the weighted average price at which" the oil "was lawfully priced by the seller in transactions with" Taunton and similar purchasers "on May 15, 1973 . . . ."[1] DOE Ruling 1979–1 specified

---

1. The regulation in full reads:
 (a) A seller may not charge a price for any item subject to this subpart which exceeds the weighted average price at which the item was

lawfully priced by the seller in transactions with the class of purchaser concerned on May 15, 1973, plus an amount which reflects on a

---

dollar-for-dollar basis, increased costs on the item.