In re: **GRAND JURY INVESTIGATION OF CUISINARTS, INC., State of Connecticut, Commonwealth of Massachusetts, State of Rhode Island and Providence Plantations, State of Vermont, State of New York, State of Colorado, State of New Jersey, State of North Carolina, State of Maine, State of New Hampshire, State of Maryland, Commonwealth of Virginia, State of Texas, State of Wisconsin, Appellants,**

**UNITED STATES of America, Intervenor,**

v.

**CUISINARTS, INC., Appellee.**

**No. 180; Docket 81–7338.**

United States Court of Appeals, Second Circuit.

Argued Nov. 2, 1981.

Decided Nov. 19, 1981.

Robert M. Langer, Asst. Atty. Gen., of Conn., Hartford, Conn. (Carl R. Ajello, Atty. Gen., Steven M. Rutstein, Asst. Atty. Gen., of Conn., Hartford, Conn., of counsel), for appellant State of Conn.

Francis X. Bellotti, Atty. Gen., Alan L. Kovacs, Paul C. Bishop, Asst. Attys. Gen., Commonwealth of Massachusetts, Boston, Mass., of counsel, for appellant Commonwealth of Massachusetts.

Dennis J. Roberts II, Atty. Gen., Patrick J. Quinlan, Sp. Asst. Atty. Gen. of Rhode Island and Providence Plantations, Providence, R.I., of counsel, for appellant State of Rhode Island and Providence Plantations.

John J. Easton, Atty. Gen., Jay I. Ashman, Glenn A. Jarrett, Asst. Attys. Gen., State of Vermont, Montpelier, Vt., of counsel, for appellant State of Vermont.

Robert Abrams, Atty. Gen., Lloyd Constantine, Asst. Atty. Gen., State of New York, New York City, of counsel, for appellant State of New York.

J. D. Mac Farlane, Atty. Gen., B. Lawrence Theis, Karen Hoffman Seymour, Asst. Attys. Gen., State of Colorado, Denver, Colo., of counsel, for appellant State of Colorado.

James R. Zazzali, Atty. Gen., Laurel A. Price, Deputy Atty. Gen., State of New Jersey, Princeton, N.J., of counsel, for appellant State of New Jersey.

Rufus L. Edmisten, Atty. Gen., H. A. Cole, Jr., Sp. Deputy Atty. Gen., Fred R. Gamin, Associate Atty. Gen., State of North Carolina, Raleigh, N.C., of counsel, for appellant State of North Carolina.

James P. Tierney, Atty. Gen., Cheryl Harrington, Senior Asst. Atty. Gen., State of Maine, Augusta, Me., of counsel, for appellant State of Maine.

Gregory H. Smith, Atty. Gen., Edward E. Lawson, Antitrust Counsel, State of New Hampshire, Concord, N.H., of counsel, for appellant State of New Hampshire.

Stephen H. Sachs, Atty. Gen., Charles O. Monk II, Robert W. Hesselbacher, Jr., Asst. Attys. Gen., State of Maryland, Baltimore, Md., of counsel, for appellant State of Maryland.

Marshall Coleman, Atty. Gen., Bertram M. Long, Craig T. Merritt, Asst. Attys. Gen., Commonwealth of Virginia, Richmond, Va., of counsel, for appellant Commonwealth of Virginia.

Mark White, Atty. Gen., Linda Aaker, Asst. Atty. Gen., State of Texas, Austin, Tex., of counsel, for appellant State of Texas.

Bronson C. La Follette, Atty. Gen., Michael L. Zaleski, Asst. Atty. Gen., State of Wisconsin, Madison, Wis., of counsel, for appellant State of Wisconsin.

Frederic Freilicher, Dept. of Justice, Washington, D. C. (William F. Baxter, Asst. Atty. Gen., Robert B. Nicholson, Mark C. Del Bianco, Dept. of Justice, Washington, D. C., of counsel), for intervenor.

Arthur M. Handler, New York City (Michael M. Meadvin, I. Joseph Gontownik, Golenbock & Barell, New York City, of counsel), for appellee.

Tyrone C. Fahner, Atty. Gen., Thomas M. Genovese, Stephen P. Juech, Asst. Attys. Gen., State of Illinois, Chicago, Ill., of counsel, for amicus curiae State of Illinois.

Charles A. Graddick, Atty. Gen., Susan Beth Farmer, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., of counsel, for amicus curiae State of Alabama.

Wilson L. Condon, Atty. Gen., Louise E. Ma, Asst. Atty. Gen., State of Alaska, Anchorage, Alaska, of counsel, for amicus curiae State of Alaska.

Robert K. Corbin, Atty. Gen., Alison B. Swan, Chief Counsel, Antitrust Division, State of Arizona, Phoenix, Ariz., of counsel, for amicus curiae State of Arizona.

Steve Clark, Atty. Gen., David L. Williams, Deputy Atty. Gen., State of Arkansas, Little Rock, Ark., of counsel, for amicus curiae State of Arkansas.

Richard S. Gebelein, Atty. Gen., Robert P. Lobue, Deputy Atty. Gen., State of Delaware, Wilmington, Del., of counsel, for amicus curiae State of Delaware.

Jim Smith, Atty. Gen., Bill L. Bryant, Jr., Asst. Atty. Gen., State of Florida, Tallahassee, Fla., of counsel, for amicus curiae State of Florida.

Tany S. Hong, Atty. Gen., Robert F. Miller, Deputy Atty. Gen., State of Hawaii, Honolulu, Hawaii, of counsel, for amicus curiae State of Hawaii.

Linley E. Pearson, Atty. Gen., Frank A. Baldwin, Deputy Atty. Gen., State of Indiana, Indianapolis, Ind., of counsel, for amicus curiae State of Indiana.

Thomas J. Miller, Atty. Gen., John R. Perkins, Asst. Atty. Gen., State of Iowa, Des Moines, Iowa, of counsel, for amicus curiae State of Iowa.

Robert T. Stephan, Atty. Gen., Wayne E. Hundley, Deputy Atty. Gen., State of Kansas, Topeka, Kan., of counsel, for amicus curiae State of Kansas.

Steven L. Beshear, Atty. Gen., James M. Ringo, Asst. Atty. Gen., Commonwealth of Kentucky, Frankfort, Ky., of counsel, for amicus curiae Commonwealth of Kentucky.

Williams J. Guste, Jr., Atty. Gen., John R. Flowers, Jr., Asst. Atty. Gen., State of Louisiana, New Orleans, La., of counsel, for amicus curiae State of Louisiana.

Frank J. Kelley, Atty. Gen., Edwin M. Bladen, Asst. Atty. Gen., State of Michigan, Detroit, Mich., of counsel, for amicus curiae State of Michigan.

Warren R. Spannaus, Atty. Gen., Stephen P. Kilgriff, Sp. Asst. Atty. Gen., State of Minnesota, St. Paul, Minn., of counsel, for amicus curiae State of Minnesota.

Bill Allain, Atty. Gen., Robert E. Sanders, Sp. Asst. Atty. Gen., State of Mississippi, Jackson, Miss., of counsel, for amicus curiae State of Mississippi.

John Ashcroft, Atty. Gen., William L. Newcomb, Jr., Asst. Atty. Gen., State of Missouri, Jefferson City, Mo., of counsel, for amicus curiae State of Missouri.

Mike Greely, Atty. Gen., Jerome J. Cate, Asst. Atty. Gen., State of Montana, Helena, Mont., of counsel, for amicus curiae State of Montana.

Paul L. Douglas, Atty. Gen., Dale A. Comer, Asst. Atty. Gen., State of Nebraska, Lincoln, Neb., of counsel, for amicus curiae State of Nebraska.

Jeff Bingaman, Atty. Gen., Jim Wechsler, Richard H. Levin, Asst. Attys. Gen., State of New Mexico, Santa Fe, N. M., of counsel, for amicus curiae State of New Mexico.

William J. Brown, Atty. Gen., Eugene F. McShane, Asst. Atty. Gen., State of Ohio, Columbus, Ohio, of counsel, for amicus curiae State of Ohio.

Jan Eric Cartwright, Atty. Gen., State of Oklahoma, Oklahoma City, Okl., of counsel, for amicus curiae State of Oklahoma.

Dave Frohnmayer, Atty. Gen., William F. Gary, Sol. Gen., Richard L. Caswell, Chief Counsel, Antitrust Division, State of Oregon, Salem, Or., of counsel, for amicus curiae State of Oregon.

Leroy S. Zimmerman, Atty. Gen., Eugene F. Waye, Deputy Atty. Gen., John L. Shearburn, Asst. Atty. Gen., Commonwealth of Pennsylvania, Harrisburg, Pa., of counsel, for amicus curiae Commonwealth of Pennsylvania.

Daniel R. McLeod, Atty. Gen., John M. Cox, Asst. Atty. Gen., State of South Carolina, Columbia, S. C., of counsel, for amicus curiae State of South Carolina.

Mark V. Meierhenry, Atty. Gen., James E. McMahon, Deputy Atty. Gen., State of South Dakota, Pierre, S. D., of counsel, for amicus curiae State of South Dakota.

William M. Leech, Jr., Atty. Gen., William J. Haynes, Deputy Atty. Gen., State of Tennessee, Nashville, Tenn., of counsel, for amicus curiae State of Tennessee.

David L. Wilkinson, Atty. Gen., Peter C. Collins, Asst. Atty. Gen., State of Utah, Salt Lake City, Utah, of counsel, for amicus curiae State of Utah.

Kenneth O. Eikenberry, Atty. Gen., John R. Ellis, Asst. Atty. Gen., State of Washington, Seattle, Wash., of counsel, for amicus curiae State of Washington.

Chauncey H. Browning, Jr., Atty. Gen., Charles G. Brown, Deputy Atty. Gen., State of West Virginia, Charleston, W. Va., of counsel, for amicus curiae State of West Virginia.

Steven F. Freudenthal, Atty. Gen., Gay Vanderpoel, Asst. Atty. Gen., State of Wyoming, Cheyenne, Wyo., of counsel, for amicus curiae State of Wyoming.

Judith W. Rogers, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, Timothy J. Shearer, Asst. Corp. Counsel, District of Columbia, Washington, D. C., of counsel, for amicus curiae District of Columbia.

Before KAUFMAN and MESKILL, Circuit Judges, and BONSAL,* District Judge.

IRVING R. KAUFMAN, Circuit Judge:

The long shadows of history enshroud the precise moment when the first grand jury was established in an English-speaking community. It appears, however, that a rudimentary ancestor of our modern grand jury was an integral element of the system of justice in medieval England over eight hundred years ago. Our forefathers carried

* Of the United States District Court for the Southern District of New York, sitting by designation.

this tradition to America and embedded its inherent powers in the Fifth Amendment of our Constitution. As this institution evolved over the centuries, its proceedings were cloaked with secrecy to guard against injury to reputations of the innocent to protect witnesses from retaliation or intimidation, and to promote the grand jury's effectiveness as an investigative device. This time-honored policy of secrecy has been the most essential, indeed indispensable, characteristic of grand jury proceedings.

█ Today, we are asked to lift this veil of secrecy. The States of Connecticut, Rhode Island, Vermont, New York, Colorado, New Jersey, North Carolina, Maine, New Hampshire, Maryland, Texas, and Wisconsin, and the Commonwealths of Massachusetts and Virginia ("States") would have us determine whether section 4F(b) of Title III of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 15f(b),[1] permits the disclosure of grand jury materials to a state attorney general without the traditional showing of compelling and particularized need.[2] The Fourth[3] and the Ninth Circuits[4] have earlier ruled that such a showing is not required. We disagree with their holding, as has the Seventh Circuit.[5] Judge Cabranes properly concluded that establishing particularized need is a requisite of gaining access to grand jury materials pursuant to section 4F(b) and Rule 6(e)(3)(C)(i) of the Federal Rules of Criminal Procedure.[6] Because the States failed to meet this standard, the district court refused to order disclosure to the States. We affirm.

I

The journey along the path leading to this appeal began several years ago. In 1979, the Antitrust Division of the United States Department of Justice commenced an investigation of the marketing practices of Cuisinarts, Inc., a corporation that dis-

---

1. Section 4F of Title III, 15 U.S.C. § 15f provides:

    (a) Whenever the Attorney General of the United States has brought an action under the antitrust laws, and he has reason to believe that any State attorney general would be entitled to bring an action under sections 12 to 27 of this title based substantially on the same alleged violation of the antitrust laws, he shall promptly give written notification thereof to such State attorney general.
    (b) To assist a State attorney general in evaluating the notice or in bringing any action under sections 12 to 27 of this title, the Attorney General of the United States shall, upon request by such State attorney general, make available to him, to the extent permitted by law, investigative files or other materials which are or may be relevant or material to the actual or potential cause of action under sections 12 to 27 of this title.

2. Subsequent to oral argument, the United States filed a motion to intervene in this appeal. The Government had filed main and reply briefs prior to argument, which set forth its position but did not indicate its status in this Court. The attorney for the United States appeared at oral argument and, with the Court's leave, presented its position, which differed slightly from the States' but generally supported disclosure without a showing of particularized need. At argument, we asked the Government to clarify its status by filing a motion for leave to intervene pursuant to Federal Rules of Appellate Procedure, Rule 15(d).

We believe the Government has a significant interest in these proceedings because the grand jury materials the States seek are in the possession of the Department of Justice. Accordingly, we grant the Government's motion for leave to intervene.

3. *United States v. Colonial Chevrolet Corp.,* 629 F.2d 943 (4th Cir. 1980), *cert. denied sub nom. Certain Unindicted Individuals & Corps. v. United States,* 450 U.S. 913, 101 S.Ct. 1352, 67 L.Ed.2d 337 (1981).

4. *United States v. B. F. Goodrich Co.,* 619 F.2d 798 (9th Cir. 1980).

5. *In re: State of Illinois Petition to Inspect and Copy Grand Jury Materials,* 659 F.2d 800 (7th Cir. 1981).

6. Federal Rules of Criminal Procedure, Rule 6(e) provides in pertinent part:

    (3) Exceptions
        (C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—
            (i) when so directed by a court preliminarily to or in connection with a judicial proceeding; . . .
    If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

tributes electric appliances known as food processors throughout the United States. In June 1980, a special grand jury was empanelled in the District of Connecticut as a result of this investigation. After hearing testimony from twenty-three witnesses and having over 50,000 documents submitted to it, the grand jury returned an indictment charging Cuisinarts with having conspired to fix, stabilize, and maintain retail prices of its food processors. The indictment alleged that such resale price maintenance amounted to a combination and conspiracy in unreasonable restraint of interstate trade, and therefore constituted a felony in violation of section 1 of the Sherman Act, as amended, 15 U.S.C. § 1. On the same day, the United States filed a companion civil complaint based upon the same factual allegations as the grand jury's indictment, seeking injunctive relief.

Both actions were substantially resolved in December 1980. Cuisinarts entered, and the court accepted, a plea of *nolo contendere* on the criminal charge. The court imposed a fine of $250,000. In the civil action, the United States and Cuisinarts stipulated to the submission of a proposed final judgment. In accordance with the terms of the proposed judgment, which the court adopted, Cuisinarts was enjoined from, *inter alia*, fixing the prices at which its food processors could be sold. This action was concluded in March 1981.

This litigation by the federal government, we note, involved the first federal criminal prosecution for vertical price fixing in many years—at least since the penalty for violating the Sherman Act was increased to a felony in 1974. Accordingly, it provided the impetus for the institution of a large and proliferating number of suits by state governments and private consumers. Shortly after the return of the federal indictment, private antitrust actions against Cuisinarts and its retailers commenced to flood the federal courts. To ease the burden this litigation imposed both on parties and on our judicial system, in January 1981, the Judicial Panel on Multidistrict Litigation ordered, pursuant to 28 U.S.C. § 1407, that eight such actions were to be consolidated for pretrial proceedings in the District of Connecticut. By March, in accordance with the Panel's orders, four additional cases against Cuisinarts were transferred and consolidated with those already before the court, including a *parens patriae* action brought by the Commonwealth of Massachusetts. In the same month, a *parens patriae* suit instituted by the State of New Jersey was transferred to the District of Connecticut. As a result, thirteen civil actions were before the court for consolidated pre-trial proceedings. Of these, seven included claims pursuant to Federal Rules of Civil Procedure, Rule 23 for the certification of a nationwide class of purchasers of Cuisinarts food processors.

The States, after receiving notice from the Department of Justice of the indictment against Cuisinarts,[7] sought all investigative materials relating to the government's criminal action against Cuisinarts in the possession of the United States Attorney General, pursuant to section 4F(b) of the Hart-Scott-Rodino Act. By letter, the Department of Justice advised the States that it would provide a copy of the indictment and civil complaint as well as copies of internal memoranda from the Department's files. The materials used or generated by the grand jury, the Department of Justice stated, would not be made available absent a court order pursuant to Fed.R.Crim.P. 6(e). Accordingly, commencing in January and continuing through March 1981, the attorneys general of fifteen states, individually and in groups, filed motions under

---

7. The Department of Justice notified the State attorneys general of the indictment charging Cuisinarts with a violation of section 1 of the Sherman Act in compliance with section 4F(a) of Title III of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 15f(a) (1976). This provision requires the Attorney General of the United States, "[w]henever [he] has brought an action under the antitrust laws, and he has reason to believe that any State attorney general would be entitled to bring an action [under this *parens partriae* authority] based substantially on the same alleged violation of the antitrust laws," to "promptly give written notification thereof to such State attorney general."

section 4F(b) of the Hart-Scott-Rodino Act and Fed.R.Crim.P. 6(e) seeking an order which would allow them to inspect and copy all grand jury materials produced by the federal grand jury's investigation resulting in the criminal indictment of Cuisinarts for resale price maintenance.[8] The United States did not object to disclosure. Two of the states, Massachusetts and New Jersey, had already brought *parens patriae* actions against Cuisinarts.[9] The other thirteen were apparently contemplating such actions.

In considering these motions, Judge Cabranes found that section 4F(b) was not intended to eliminate the showing of compelling and particularized need required for disclosure of grand jury materials. Because the States had failed to meet this standard, he denied the motions but indicated that such denial would be without prejudice to a renewed application for disclosure upon demonstrating particularized need. This appeal followed.

## II

■ We are being urged in this interesting case to erode further the secrecy provisions of Fed.R.Crim.P. 6(e) by making available the grand jury minutes and documents *in toto*, without even a showing of "particularized need." Congress enacted the *parens patriae* provisions of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. §§ 15c–15h (1976), to provide a meaningful remedy for small consumers injured by antitrust violations. H.R.Rep.No. 499, 94th Cong., 2d Sess. 4–8 (1975), *reprint-* *ed in* [1976] U.S.Code Cong. & Ad.News 2572–78. The provisions of the Act authorize state attorneys general to bring treble damage actions on behalf of all state residents who have been injured by these violations. 15 U.S.C. § 15c (1976). Section 4F(b) of the Act offers assistance to state attorneys general in the prosecution of such suits by providing in pertinent part:

(b) To assist a State attorney general in evaluating the notice or in bringing any action under sections 12 to 27 of this title, the Attorney General of the United States shall, upon request by such State attorney general, make available to him, *to the extent permitted by law, any investigative files or other materials* which are or may be relevant or material to the actual or potential cause of action under sections 12 to 27 of this title. (emphasis added).

In analyzing the issue of disclosure pursuant to section 4F(b), we are required to weigh two fundamental questions of statutory construction—whether grand jury materials fall within the "investigative files or other materials" language of section 4F(b) and, if so, whether their disclosure is forbidden because section 4F(b) allows release only "to the extent permitted by law."

### A.

The States argue that, although the statutory language makes no mention of grand jury materials, such materials in possession of the Department of Justice are part of its "investigative files or other materials." They do acknowledge, however, that the

---

8. Fourteen of the fifteen states that filed motions seeking access to the grand jury materials appeal from the district court's order denying their motions. The fifteenth, the Commonwealth of Pennsylvania, has not joined in the instant appeal. Rather, it supports reversal of the district court's holding as *amicus curiae* along with the States of Alabama, Alaska, Arizona, Arkansas, Delaware, Florida, Hawaii, Illinois, Indiana, Iowa, Kansas, Louisiana, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Mexico, Ohio, Oklahoma, Oregon, South Carolina, South Dakota, Tennessee, Utah, Washington, West Virginia, Wyoming, the Commonwealth of Kentucky, and the District of Columbia.

9. When Massachusetts and New Jersey filed their *parens patriae* complaints, they also served Cuisinarts with discovery demands pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure. Appellants Connecticut and Maryland, although not *parens patriae* plaintiffs in civil actions, addressed investigative demands to Cuisinarts under authority of their own state statutes prior to petitioning the district court for release of grand jury materials. Appellant North Carolina addressed an investigative demand to Cuisinarts during the pendency of its motion before the district court.

Attorney General is not required by section 4F(b) to make these particular materials or files available merely upon request. The States recognize the Supreme Court's mandate that disclosure of grand jury materials is solely within the discretion of the court. *See Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959).

Nevertheless, they overlook the essence of this holding. The grand jury, while maintaining independence in many areas, is fundamentally an arm of the judiciary. *See Levine v. United States*, 362 U.S. 610, 617, 80 S.Ct. 1038, 1043, 4 L.Ed.2d 989 (1960). It is not simply a tool or instrument of the executive or legislative branch. *See United States v. Fisher*, 455 F.2d 1101, 1105 (2d Cir. 1972). Indeed, grand jury proceedings remain the records of the courts, and courts must decide whether they should be made public.[10] Justice Whittaker felicitously expressed this view in his concurring opinion in *United States v. Procter & Gamble Co.*: "[G]rand jury minutes and transcripts are not the property of the Government's attorneys, agents, or investigators. . . . Instead, those documents are records of the court." 356 U.S. 677, 684–85, 78 S.Ct. 983, 987–988, 2 L.Ed.2d 1077 (1958).

Since grand jury materials are traditionally the records of the Judicial Branch,

it would be curious logic indeed to deduce from this premise that such materials are included within the Department of Justice's files or materials. We are not unsympathetic to the States' assertion that little would be available if grand jury materials were excluded. Momentary reflection, however, reveals that such a reading of the statute does not foreclose the possibility of securing a broad spectrum of other useful materials from the Justice Department's files. For instance, state attorneys general could procure information that the Justice Department obtained through civil discovery and through investigations by its Staff, staff memoranda, and government data and analyses. In addition, the states could gather at least as much, or perhaps more, information through their own civil discovery. Our interpretation of the statutory language, therefore, does not thwart antitrust enforcement. Rather, it reflects the policy that grand jury secrecy is "older than our Nation itself," *Pittsburgh Plate Glass Co. v. United States, supra*, 360 U.S. at 399, 79 S.Ct. at 1240.[11] Accordingly, we cannot conclude that Congress—without thoroughly debating the issue and without making specific provision for it—intended general terminology such as "investigative files or other materials" to embrace grand jury materials. *Accord, In re: State of Illinois*

---

**10.** In an analogous context, courts and the Department of Justice have not considered grand jury materials records of the Department of Justice, although the Department has these materials in its possession. The Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976) makes "agency records" available to any person upon request. Although agency possession, in some cases, is sufficient to make certain materials "agency records," such is not always the case. Note, *The Definition of "Agency Records" under the Freedom of Information Act*, 31 Stan.L.Rev. 1093, 1106–09 (1979). *See Valenti v. United States Dep't of Justice*, 503 F.Supp. 230 (E.D.La.1980).

**11.** We acknowledge that the traditional rule of grand jury secrecy has been subject to criticism. One commentator, for instance, has theorized that the policy of secrecy evolved, historically, in too expansive a manner. He concludes that jurisdictions which follow traditional rules do so without necessity. Sherry, *Grand Jury Minutes: The Unreasonable Rule of*

*Secrecy*, 48 Va.L.Rev. 668, 669 (1962). Others suggest that the dismissal of the grand jury marks the end of the need for secrecy. Hassett, *Ex Parte Pre-Trial Discovery: The Real Vice of Parallel Investigations*, 36 Wash. & Lee L.Rev. 1049, 1058 (1979).

We are aware of these arguments, and recognize that an emphasis on secrecy may impair other values. For example, since grand jury proceedings are *ex parte* in nature, they lack the fundamental protections of due process and may generate misleading or ambiguous information that would likely be corrected in an adversary proceeding. *See United States v. Scully*, 225 F.2d 113, 116 (2d Cir.), *cert. denied*, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788 (1955) (in grand jury proceedings "there is no right to counsel, no right of confrontation, no right to cross-examine or to introduce evidence in rebuttal and ordinarily no requirement that the evidence introduced be only such as would be admissible upon a trial" (citation omitted)).

*Petition to Inspect and Copy Grand Jury Materials*, 659 F.2d 800, at 803–804 (7th Cir. 1981).[12]

### B.

■ Our holding is not grounded solely on the "investigative files or other materials" language because section 4F(b) clearly indicates that Congress did not intend to create new standards for disclosure of grand jury materials to state attorneys general. Section 4F(b) provides, also, that investigative files and other materials are to be made available only "to the extent permitted by law." 15 U.S.C. § 15f(b). Following well-settled principles of statutory construction, we begin with the language of the statute itself. *See Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). As a rule, we must regard the language of the statute as conclusive unless the legislative history contains a direct expression of congressional intent to the contrary. *Id.*

The law governing grand jury disclosure is set forth in Federal Rules of Criminal Procedure, Rule 6(e)[13] which provides in pertinent part:

> (2) General Rule of Secrecy. [A]n attorney for the government ... shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules.
>
> (3) Exceptions.
>
> .    .    .    .    .
>
> (C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

> (i) when so directed by a court preliminarily to or in connection with a judicial proceeding; ...

Rule 6(e)(3)(C)(i) does not delineate the standards for determining when materials should be released. The Supreme Court has firmly established, however, that Rule 6(e)(3)(C)(i) specifically prohibits granting access to grand jury materials unless "particularized need" is shown by the requesting party. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 & n.12, 99 S.Ct. 1667, 1674 & n.12, 60 L.Ed.2d 156 (1979); *Dennis v. United States*, 384 U.S. 855, 872, 86 S.Ct. 1840, 1850, 16 L.Ed.2d 973 (1966); *Pittsburgh Plate Glass Co. v. United States, supra*, 360 U.S. at 400, 79 S.Ct. at 1241; *United States v. Procter & Gamble Co., supra*, 356 U.S. at 683, 78 S.Ct. at 986.

This restrictive standard gives voice to the important policy considerations which underlie the historic rule of grand jury secrecy. Generally, it has been recognized as we have stated, that the policy of secrecy is essential to the integrity of the grand jury.[14] If this concern were ignored, individuals who were the subject of a grand jury inquiry might be able to obstruct justice by means that could interfere with the orderly processes of law.[15] The possibility of retaliation cannot be ignored as a reason for preserving grand jury secrecy.[16] It is apparent, therefore, that secrecy protects, and was intended to protect, those who appear before the grand jury as witnesses. Indeed, witnesses before the grand jury, because they are aware of the traditional secrecy enveloping these proceedings, have

---

**12.** The Fourth and the Ninth Circuits found that grand jury materials are included in the terminology "investigative files and other materials." *See United States v. Colonial Chevrolet Corp., supra*, 629 F.2d at 947; *United States v. B. F. Goodrich Co., supra*, 619 F.2d at 800.

**13.** Fed.R.Crim.P., Rule 6(e)(2) codifies the traditional rule of grand jury secrecy. Kaufman, *The Grand Jury—Its Role and Its Powers*, 17 F.R.D. 331 (1954).

**14.** *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979).

**15.** *Id.* at 219, 99 S.Ct. at 1673; *see United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–82 n.6, 78 S.Ct. 983, 985–986 n.6, 2 L.Ed.2d 1077 (1958) (citing *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954)).

**16.** *Douglas Oil Co. v. Petrol Stops Northwest, supra*, 441 U.S. at 219, 99 S.Ct. at 1673; *United States v. Procter & Gamble Co., supra*, 356 U.S. at 682, 78 S.Ct. at 986.

reason to assume that their presence and their testimony will not be revealed. There is always the risk that, if they knew their statements would readily come to light, their responses to questions could become guarded. As a result, the effectiveness of the grand jury, a public institution serving the community, could suffer.[17]

Of even greater importance, secrecy safeguards the innocent. A glaring injustice could be inflicted and irreparable injury caused to the reputation of a person if it were to become known that there is or ever was before the grand jury any proceeding concerning him even if he were not subsequently indicted.[18] Moreover, disclosure of grand jury proceedings could stigmatize individuals not guilty of any crime.[19] Recognizing compelling reasons, some of which we have stated, the Supreme Court has consistently refused to breach the walls of grand jury secrecy absent a showing of particularized need. See Douglas Oil Co. v. Petrol Stops Northwest, supra, 441 U.S. at 219 n.10, 99 S.Ct. at 1673 n.10; United States v. Procter & Gamble Co., supra, 356 U.S. at 681–82 n.6, 78 S.Ct. at 985–986. This need to limit disclosure does not cease entirely after the grand jury has completed its term, but rather remains, albeit somewhat reduced, once the proceedings of the grand jury have been concluded. See Douglas Oil Co. v. Petrol Stops Northwest, supra, 441 U.S. at 222, 99 S.Ct. at 1674.

The States, however, argue that state attorneys general need not establish particularized need to obtain disclosure, stating that in the Hart-Scott-Rodino Act, Congress expressly acknowledged the special position state attorneys general occupy in Congress's plan for antitrust enforcement. In sum, the States assert that in enacting section 4F(b) Congress balanced the need for disclosure against the interest in grand jury secrecy and reached a resolution in favor of disclosure without particularized need. See also United States v. Colonial Chevrolet Corp., 629 F.2d 943 (4th Cir. 1980), cert. denied sub nom. Certain Unindicted Individuals & Corps. v. United States, 450 U.S. 913, 101 S.Ct. 1352, 67 L.Ed.2d 337 (1981); United States v. B. F. Goodrich Co., 619 F.2d 798 (9th Cir. 1980).[20]

We disagree with the States' analyses. Section 4F(b), in the most direct language, requires that files be made available only "to the extent permitted by law." At the time this section was enacted, the applicable law included both Rule 6(e) and the Supreme Court decisions requiring particularized need. See Dennis v. United States, supra; Pittsburgh Plate Glass Co. v. United States, supra; United States v. Procter & Gamble Co., supra. To argue, as do the States, that Congress intended district courts to apply only the language of Rule 6(e)(3)(C)(i) and to ignore the particularized need standard when deciding a section 4F(b) request for disclosure denigrates, perhaps unintentionally, Congress's legal acumen.

Certainly, it may be presumed that a knowledgeable body of legislators, dealing extensively with an innovative approach to antitrust enforcement, was well aware that a Supreme Court decision interpreting a statute is at least as much law as a procedural rule promulgated by the Supreme Court and approved by Congress. Furthermore, the phrase "to the extent permitted

17. See United States v. Procter & Gamble Co., supra, 356 U.S. at 681–82, 78 S.Ct. at 985–986.

18. See Douglas Oil Co. v. Petrol Stops Northwest, supra, 441 U.S. at 219, 99 S.Ct. at 1673; United States v. Procter & Gamble Co., supra, 356 U.S. at 681–82 n.6, 78 S.Ct. at 985–986 n.6.

19. Id. See Note, Disclosure of Grand Jury Materials Under Clayton Act Section 4F(b), 79 Mich.L.Rev. 1234, 1257–69 (discussing need for grand jury secrecy in relation to section 4F(b)).

20. Both the Fourth and the Ninth Circuits held that, pursuant to section 4F(b), state attorneys general are not required to demonstrate a particularized need. United States v. Colonial Chevrolet Corp., supra, 629 F.2d at 950; United States v. B. F. Goodrich Co., supra, 619 F.2d at 801. The Fourth Circuit did not hold that state attorneys general have an absolute right to disclosure but rather that "the burden of opposing disclosure in such a situation rests on those who would deny disclosure." United States v. Colonial Chevrolet Corp., supra, 629 F.2d at 951.

by law" on its face does not appear to us to provide a clear statement that Congress contemplated establishing a new, more liberal law of disclosure. The contrary seems to be more reasonable.

The suggestion of the States seems particularly implausible when we recognize that Congress directed section 4F(b) to the Attorney General, not to the district courts that apply the particularized need standard. Nothing in section 4F(b) refers to court-ordered disclosure. Nor is reference made to judicial cooperation with the Attorney General to encourage the enforcement of civil antitrust actions. We are confident that if Congress had intended that district courts should no longer consider requests by state attorneys general to be governed by the particularized need standard, it would have made its intention crystal clear in light of its awareness of the issue.[21] We are certain that Congress would not have altered an important traditional policy such as the " 'indispensable secrecy of grand jury proceedings,' " *United States v. Procter & Gamble Co., supra*, 356 U.S. at 682, 78 S.Ct. at 986 (citation omitted), without articulating its will explicitly.

■ If more is needed, it is clear that the legislative history, although spare, negates

any inference that Congress intended section 4F(b) to modify the standard for disclosure of grand jury materials. During debate, Senator Roman Hruska objected to section 4F(b) stating that it could turn the Department of Justice into a "massive document distribution center." 122 Cong.Rec. 29144 (1976). Responding to this criticism, Senator James Abourezk, Senate Floor Manager for the bill, pointed out: "The section specifically limits the Attorney General's power to release documents to whatever his powers are under existing law. Under existing law, he cannot turn over materials given in response to a grand jury demand or to a civil investigative demand."[22] 122 Cong.Rec. 29160 (1976). We believe, as we have often stated, that a floor manager's interpretations of a statute are authoritative, and his comments during debate should be given weight as we construe statutes. *See, e. g., United States v. Oates*, 560 F.2d 45, 70 n.26 (2d Cir. 1977); *Pan American World Airways, Inc. v. C.A.B.*, 380 F.2d 770, 782 (2d Cir. 1967), aff'd, 391 U.S. 461, 88 S.Ct. 1715, 20 L.Ed.2d 748 (1968).

Only one other portion of the legislative history directly sheds light upon Congress's understanding of the appropriate standard

21. When considering the Hart-Scott-Rodino Act Congress was well aware of the particularized need standard. The Senate version of the Act, of which section 4F(b) was a part, included a provision, § 202(1), that would have afforded all civil antitrust plaintiffs access to grand jury materials after completion of the federal case. S.Rep. No. 803, 94th Cong., 2d Sess. 110 (1976). The Report refers directly to the particularized need standard and the discretion of a trial judge to grant or deny disclosure. *Id.* at 33. Since the Senate upheld this standard by rejecting the provisions, it would be unlikely that Congress intended section 4F(b) to alter that standard without explicitly stating so. We recognize that a change in a statute during the course of enactment is not necessarily a dispositive indication of Congressional intent, but we do believe express rejection of a specific provision may be significant. *See Fox v. Standard Oil Co.*, 294 U.S. 87, 96, 55 S.Ct. 333, 337, 79 L.Ed. 780 (1935).

22. The Hart-Scott-Rodino Act, in addition to its *parens patriae* provisions, amended the Antitrust Civil Process Act to increase the Department of Justice's civil investigative demand

powers. *See* 15 U.S.C. §§ 1311–14 (1976) (amended 1979). Although civil investigative demand materials would aid state enforcement of federal antitrust laws, the Act mandates that such materials be kept strictly confidential. 15 U.S.C. § 1313 (1976) (amended 1980). Such a requirement was imposed to safeguard the rights of individuals under investigation and to protect witnesses from retaliation. *See* H.R. Rep.No.1343, 94th Cong., 2d Sess. 7–8 (1976), *reprinted in* [1976] U.S.Code Cong. & Ad.News 2602; S.Rep.No.803, 94th Cong., 2d Sess. 204 (1976). It would be curious indeed to read section 4F(b) as if it were intended to liberalize Rule 6(e)'s disclosure requirements and not to interpret it also to make the civil investigative restriction less strict—particularly because similar policies support secrecy in both instances. Such a reading, however, would be quite difficult to reconcile with the strictures imposed on disclosure of civil investigative demands incorporated in the same act as section 4F(b). Logic would dictate that section 4F(b), therefore, cannot be interpreted as establishing a new, more liberal law of disclosure.

for disclosure. The House Committee Report on an earlier version of section 4F(b) notes that the phrase "to the extent permitted by law" means that "the files are to be made available except where specifically prohibited." H.R.Rep.No.499, 94th Cong., 2d Sess. 17 (1975), *reprinted in* [1976] U.S. Code Cong. & Ad.News 2586. This statement and Senator Abourezk's remarks clearly lead to the same conclusion—that Rule 6(e)(3)(C)(i), as construed by the Supreme Court, the existing law then as now, forbids disclosure without a showing of particularized need. *See United States v. Procter & Gamble Co., supra.*

Finally, the States contend that the purpose of the Hart-Scott-Rodino Act—to foster effective state antitrust enforcement—places state attorneys general in a preferred position relative to that of private plaintiffs in the enforcement of federal antitrust laws. Therefore, they argue, Congress must have intended to relieve them of the requirement of showing particularized need. The Fourth and the Ninth Circuits have adopted this rationale, *see United States v. Colonial Chevrolet Corp., supra; United States v. B. F. Goodrich Co., supra,* while the Seventh Circuit has expressly rejected it. *See In re: State of Illinois, supra.* We find the latter position to be sounder. We do not believe that simply because Congress augmented the role of state attorneys general in the federal antitrust enforcement scheme, it necessarily, or logically follows that Rule 6(e) was diluted *sub silentio* and should, therefore, be read to alter the standard for release of grand jury materials.

It is true that by authorizing states to institute civil antitrust actions as *parens patriae,* the Hart-Scott-Rodino Act carves out a special place for state governments in enforcing federal antitrust laws. These actions, however, were essentially directed toward remedying inadequacies in the existing scheme of enforcement which affected the usefulness of private consumer class actions and were barriers to suits brought by small consumers. *See* Scher, *Emerging Issues Under the Antitrust Improvements Act of 1976,* 77 Colum.L.Rev. 679, 711–39

(1977). The basic problems addressed were the difficulty of achieving class certification of consumer actions pursuant to Federal Rules of Civil Procedure, Rule 23, *see* H.R. Rep.No.499, 94th Cong., 2d Sess. 6–8 (1975), *reprinted in* [1976] U.S.Code Cong. & Ad. News 2576–77, and the complexity of measuring and distributing damages in class actions, *see id.* at 11–17, *reprinted in* [1976] U.S.Code Cong. & Ad.News 2583–84; Kintner, Griffin & Goldston, *The Hart-Scott-Rodino Antitrust Improvements Act of 1976: An Analysis,* 46 Geo.Wash.L.Rev. 1, 19–20 (1977). In effect, the thrust of Title III of the Act was to overcome obstacles to private class actions through enabling state attorneys general to function more efficiently as consumer advocates. *See* H.R. Rep.No.499, 94th Cong., 2d Sess. 8 (1975), *reprinted in* [1976] U.S.Code Cong. & Ad. News 2578. Accordingly, Congress removed the barrier presented by Rule 23 by eliminating the requirement of class certification in *parens patriae* actions. *See* 15 U.S.C. § 15c(a). In addition, it made the actions less complex by permitting damages to be computed through aggregation techniques. *See* 15 U.S.C. § 15d.

■ As Judge Cabranes correctly pointed out, discovery issues were not of pressing moment to the draftsmen. They responded primarily to the concern that the individual consumer could not hope to employ the investigative resources necessary to uncover a possible conspiracy in violation of the antitrust laws. *See* H.R.Rep.No.499, 94th Cong. 2d Sess. 5–8, *reprinted in* [1976] U.S.Code Cong. & Ad.News 2575–76. Such an inability, the draftsmen clearly were aware, could be rectified by garnering the discovery resources of the class or the state government in a *parens patriae* suit. Thus, we conclude, as did Judge Cabranes, that the draftsmen's actual purpose was to mitigate the problems posed by the individual consumer's paucity of financial resources. Surely, if Congress had perceived limitations imposed upon ·discovery by the Federal Rules of Civil Procedure or the Federal Rules of Criminal Procedure as deterrents to antitrust enforcement, it would have raised and

resolved them. Nothing in the reports of the relevant Congressional committees evidences such a concern or intention. Accordingly, we cannot deduce that Congress intended to alter or dispense with the existing rules.

Moreover, both in these and in other circumstances, governmental and other entities acting in the public interest have been required to meet the standard of particularized need when requesting grand jury materials. *See, e.g., In re: State of Illinois, supra; Texas v. United States Steel Corp.*, 546 F.2d 626 (5th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); Note, *Disclosure of Grand Jury Materials in Parens Patriae Actions*, 81 Colum. L.Rev. 410, 417–19 (1981). Indeed, we, for instance, have recently denied the request of a public entity, the Grievance Committee of the Connecticut State Bar, for access to grand jury materials. *United States v. Sobotka*, 623 F.2d 764 (2d Cir. 1980). We acknowledged that the Committee was a public entity charged with performing a duty in the public interest—maintaining the integrity of the legal profession. *Id.* at 767. We refused to release the materials, nevertheless, because the Committee had not established particularized need. *Id.* at 768. That standard, we noted, applies to public entities as well as private parties. *Id.*

To summarize what we have concluded, we note that the decisions of the Supreme Court, the language of the statute and its legislative history do not lead us to the conclusion the States would have us reach. Rather than modifying the law governing release of grand jury materials, the statute distinctly and precisely states that investigative files or other materials shall be made available only "to the extent permitted by law." Indeed, as we have noted, an examination of the legislative history reveals a forceful indication that section 4F(b) was not intended to transform the existing law of disclosure. We conclude, therefore, that section 4F(b) does not free state attorneys general from the traditional obligation to establish particularized need to obtain disclosure.